Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/01/2018 09:10 AM CDT

- 802 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SCHMEIDLER v. SCHMEIDLER
Cite as 25 Neb. App. 802

Benjamin J. Schmeidler, appellant, v.
Jessica F. Schmeidler, appellee.

___ N.W.2d ___

Filed April 17, 2018.    No. A-17-361.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Appeal and Error.** An appellate court's review in an action for dissolution of marriage is de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, and alimony.

2. **Divorce: Child Custody.** When custody of a minor child is an issue in a proceeding to dissolve the marriage of the child's parents, child custody is determined by parental fitness and the child's best interests.

3. **Child Custody.** When both parents are found to be fit, the inquiry for the court is the best interests of the children.

4. ____. In determining a child's best interests under Neb. Rev. Stat. § 42-364 (Reissue 2016), courts may consider factors such as general considerations of moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and the parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy educational needs of the child; and many other factors relevant to the general health, welfare, and well-being of the child.

5. **Evidence: Appeal and Error.** Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

6. **Child Custody: Appeal and Error.** In contested custody cases, where material issues of fact are in great dispute, the standard of review and the amount of deference granted to the trial judge, who heard and

- 803 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
SCHMEIDLER v. SCHMEIDLER
Cite as 25 Neb. App. 802

observed the witnesses testify, are often dispositive of whether the trial court's determination is affirmed or reversed on appeal.

7. **Child Custody.** Joint physical custody must be reserved for those cases where, in the judgment of the trial court, the parents are of such maturity that the arrangement will not operate to allow the child to manipulate the parents or confuse the child's sense of direction, and will provide a stable atmosphere for the child to adjust, rather than perpetuating turmoil or custodial wars.

8. ____. Courts typically do not award joint legal custody when the parties are unable to communicate effectively.

9. ____. Where the parties are unable to communicate and trust one another, joint decisionmaking by the parents is not in the child's best interests.

10. **Visitation.** The trial court has discretion to set a reasonable parenting time schedule.

11. ____. The determination of the reasonableness of a parenting plan is to be made on a case-by-case basis.

12. ____. Parenting time relates to continuing and fostering the normal parental relationship of the noncustodial parent.

13. ____. The best interests of the children are the primary and paramount considerations in determining and modifying visitation rights.

14. ____. Although limits on visitation are an extreme measure, they may be warranted where they are in the best interests of the children.

15. **Visitation: Courts: Stipulations.** It is the responsibility of the trial court to determine questions of custody and visitation of minor children according to their best interests. This is an independent responsibility and cannot be controlled by the agreement or stipulation of the parties themselves or by third parties.

16. **Parent and Child.** The best interests of a child require a parenting arrangement which provides for a child's safety, emotional growth, health, stability, and physical care.

17. **Divorce: Property Division.** Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365.

18. ____: ____. Property which one party brings into the marriage is generally excluded from the marital estate.

19. **Divorce: Property Division: Proof.** The burden of proof to show that property is nonmarital remains with the person making the claim in a dissolution proceeding.

- 804 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SCHMEIDLER v. SCHMEIDLER
Cite as 25 Neb. App. 802

20. **Property Division.** Marital debt includes only those obligations incurred during the marriage for the joint benefit of the parties.

Appeal from the District Court for Clay County: Vicky L. Johnson, Judge. Affirmed as modified.

Scott D. Grafton, of Grafton Law Office, P.C., L.L.O., for appellant.

Benjamin H. Murray, of Germer, Murray & Johnson, for appellee.

Moore, Chief Judge, and Riedmann, Judge, and Inbody, Judge, Retired.

Riedmann, Judge.

## INTRODUCTION

Benjamin J. Schmeidler appeals the order of the district court for Clay County which dissolved his marriage to Jessica F. Schmeidler, awarded custody and parenting time of the parties' minor child, and divided the marital estate. We affirm as modified as explained below.

## BACKGROUND

Benjamin and Jessica were married in September 2011. Their daughter was born in 2014. On May 19, 2016, Benjamin filed a complaint for dissolution of the marriage.

Trial on the issues of property division, custody, parenting time, and child support was held on February 23, 2017. At the time of trial, Benjamin was 28 years old and worked as a general farmhand. His parents, friends, and boss generally testified that he was a good, involved father to his daughter and acted as a "father figure" to Jessica's older son from a previous relationship. They testified that they had seen Jessica belittle Benjamin and yell at him in public. They admitted seeing both Benjamin and Jessica drink alcohol during the marriage but denied that Benjamin had a drinking problem.

To the contrary, Jessica testified that Benjamin drank alcohol every day when she first met him and that his drinking

- 805 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
SCHMEIDLER v. SCHMEIDLER
Cite as 25 Neb. App. 802

escalated during the marriage. She claimed that he became angry and violent when he was drinking. Jessica's mother testified that Benjamin drank frequently and excessively and that there were occasions where she was scared for the safety of Jessica's older child while he was under Benjamin's care.

On March 15, 2017, the district court entered an order dissolving Benjamin and Jessica's marriage. The court found that the parties have "a long history of conflict," rendering joint decisionmaking and custody impossible. Thus, the court determined that the best interests of the child would be served by placing her legal and physical custody with Jessica, subject to Benjamin's parenting time. The court adopted the parenting plan proposed by Jessica, which granted Benjamin parenting time with the child every other weekend and every Wednesday evening. Benjamin was required to provide transportation to and from his parenting time, and the parenting plan prohibited the child from having contact with certain family members of Jessica's during Benjamin's parenting time. In addition, the parenting plan contained a provision that prohibited Benjamin from consuming alcohol while the child was in his possession, or for 24 hours prior. Benjamin was also ordered to pay $568 per month in child support.

The court added a "safety plan" to the parenting plan, which provides that if at any time during Benjamin's parenting time Jessica learns Benjamin has been drinking alcohol, it is understood and agreed that Benjamin's parenting time should end, and that Jessica, or a responsible adult, is allowed to pick up the child and Benjamin's parenting time concludes. In addition, under the safety plan, if Jessica suspects that Benjamin has been consuming alcohol during his parenting time, she is allowed to request that Benjamin perform a breath test. If Benjamin tests positive at the beginning of parenting time, he will forfeit that parenting time, and if he tests positive at the end of a parenting time period, he forfeits his next parenting time period. The safety plan further requires that Benjamin "self-report" to Jessica any time he has consumed alcohol

- 806 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
SCHMEIDLER v. SCHMEIDLER
Cite as 25 Neb. App. 802

and that if the child was present while he was drinking, he forfeits his next parenting time. Finally, under the safety plan, if Benjamin has an alcohol-related criminal offense, his parenting time is to be suspended, unless supervised by his parents, until Benjamin and Jessica are able to reach further agreement for the reinstatement of parenting time or further order of the court.

The court valued and divided the marital assets and debts and ordered that Benjamin make an equalization payment to Jessica in the amount of $5,000. Benjamin timely appeals to this court.

## ASSIGNMENTS OF ERROR

Benjamin assigns, summarized, that the district court erred in (1) failing to adopt his proposed parenting plan, (2) adopting Jessica's proposed parenting plan despite several errors, (3) impermissibly delegating to Jessica the authority to unilaterally suspend his parenting time, and (4) classifying and valuing certain assets and debts of the parties and ordering him to pay an equalization payment of $5,000.

## STANDARD OF REVIEW

[1] An appellate court's review in an action for dissolution of marriage is de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Burcham v. Burcham*, 24 Neb. App. 323, 886 N.W.2d 536 (2016). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, and alimony. *Id*.

## ANALYSIS

*Failing to Adopt Benjamin's*
*Proposed Parenting Plan.*

Benjamin argues that the district court should have adopted the parenting plan he proposed as opposed to adopting Jessica's proposed parenting plan. We find no abuse of discretion in the adoption of Jessica's proposed plan.

- 807 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SCHMEIDLER v. SCHMEIDLER
Cite as 25 Neb. App. 802

In his parenting plan, Benjamin sought joint legal and physical custody of the child. Thus, on appeal, Benjamin argues that the court erred in failing to award joint legal and physical custody, because imposing joint custody and allowing him additional parenting time is in the best interests of the child.

[2,3] When custody of a minor child is an issue in a proceeding to dissolve the marriage of the child's parents, child custody is determined by parental fitness and the child's best interests. *Maska v. Maska*, 274 Neb. 629, 742 N.W.2d 492 (2007). When both parents are found to be fit, the inquiry for the court is the best interests of the children. *Id*. The district court made no explicit finding, in the present case, that either Benjamin or Jessica was unfit, and thus, its task was to determine whether a joint physical custody arrangement was in the child's best interests.

[4] In determining a child's best interests under Neb. Rev. Stat. § 42-364 (Reissue 2016), courts may consider factors such as general considerations of moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and the parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy educational needs of the child; and many other factors relevant to the general health, welfare, and well-being of the child. *Maska v. Maska, supra*.

Benjamin claims that upon an examination of these factors, the best interests of the minor child require joint legal and physical custody with the parties. We disagree.

[5,6] In this case, both Benjamin and Jessica presented evidence concerning their own parenting strengths and the weaknesses of the other. The trial court determined that Jessica was a more credible witness. Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and

- 808 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SCHMEIDLER v. SCHMEIDLER
Cite as 25 Neb. App. 802

may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Barth v. Barth*, 22 Neb. App. 241, 851 N.W.2d 104 (2014). In fact, in contested custody cases, where material issues of fact are in great dispute, the standard of review and the amount of deference granted to the trial judge, who heard and observed the witnesses testify, are often dispositive of whether the trial court's determination is affirmed or reversed on appeal. *Id*.

The court additionally concluded that Jessica had been the primary parent of the child, Benjamin had a history of domestic violence and abuses alcohol in a way that poses a danger to the child, and placing the child's custody with Jessica will allow the child to have a stronger relationship with Jessica's older child.

[7-9] More importantly with respect to the issue of joint custody, the court found that the parties have a long history of conflict, rendering joint decisionmaking and custody impossible, and that therefore, joint custody was not in the child's best interests. The Nebraska Supreme Court has repeatedly held that joint physical custody must be reserved for those cases where, in the judgment of the trial court, the parents are of such maturity that the arrangement will not operate to allow the child to manipulate the parents or confuse the child's sense of direction, and will provide a stable atmosphere for the child to adjust, rather than perpetuating turmoil or custodial wars. See, e.g., *Donald v. Donald*, 296 Neb. 123, 892 N.W.2d 100 (2017); *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007). And this court has acknowledged that courts typically do not award joint legal custody when the parties are unable to communicate effectively. See *State on behalf of Maddox S. v. Matthew E.*, 23 Neb. App. 500, 873 N.W.2d 208 (2016). Where the parties are unable to communicate and trust one another, joint decisionmaking by the parents is not in the child's best interests. See *Kamal v. Imroz*, 277 Neb. 116, 759 N.W.2d 914 (2009).

- 809 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SCHMEIDLER v. SCHMEIDLER
Cite as 25 Neb. App. 802

Given the evidence presented at trial, our standard of review, and deference to the trial court's observation of the witnesses, we cannot find that the district court abused its discretion in declining to award joint custody and instead awarding custody of the child to Jessica.

*Jessica's Proposed Parenting Plan.*

Benjamin challenges the parenting plan as ordered in several respects. He claims that the court erred in ordering that the minor child have no contact with certain family members of Jessica, ordering that Benjamin provide all transportation to and from his parenting time, and only granting him 2 weeks of summer parenting time, rather than the 6 weeks he requested.

[10-14] The trial court has discretion to set a reasonable parenting time schedule. *Thompson v. Thompson*, 24 Neb. App. 349, 887 N.W.2d 52 (2016). The determination of the reasonableness of a parenting plan is to be made on a case-by-case basis. *Id*. Parenting time relates to continuing and fostering the normal parental relationship of the noncustodial parent. *Id*. The best interests of the children are the primary and paramount considerations in determining and modifying visitation rights. *Id*. Although limits on visitation are an extreme measure, they may be warranted where they are in the best interests of the children. *Aguilar v. Schulte*, 22 Neb. App. 80, 848 N.W.2d 644 (2014).

In the instant case, the district court found Jessica's testimony credible. Jessica testified that certain of her family members have threatened her and drive by her house on almost a daily basis. Based on this evidence, we cannot find that the district court abused its discretion by placing a limitation on Benjamin's parenting time and not allowing contact between the child and these family members.

With respect to transportation and summer parenting time, the district court has the authority to impose a reasonable parenting plan according to the best interests of the child. The

- 810 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SCHMEIDLER v. SCHMEIDLER
Cite as 25 Neb. App. 802

record is unclear as to the distance between Benjamin's and Jessica's current residences; however, it appears they live some distance apart. Prior to imposition of the temporary order in September 2016, the parties would share transportation and "meet halfway" in Clay Center, Nebraska, in order to exchange the child. The parenting plan attached to the decree requires that Benjamin pick up the child from Jessica at the beginning of his parenting time and return the child to Jessica at the conclusion of his parenting time. We conclude that requiring Benjamin to provide all transportation constitutes an abuse of discretion given his limited parenting time, particularly on Wednesday evenings. We therefore modify the parenting plan to require that the parties meet in Clay Center in order to exchange the child for Benjamin's Wednesday evening parenting time.

Further, although the district court is not required to grant equal parenting time to the parents, Nebraska's Parenting Act recognizes the importance of both parents remaining active and involved in parenting in order to serve the best interests of the child. See, Neb. Rev. Stat. § 43-2923(3) (Reissue 2016); *Kamal v. Imroz*, 277 Neb. 116, 759 N.W.2d 914 (2009). Indeed, the parenting plan adopted by the district court in this case acknowledges that the best interests of the child will be maintained through the ongoing involvement of both Jessica and Benjamin. And parenting time relates to continuing and fostering the normal parental relationship of the noncustodial parent. *Thompson v. Thompson, supra*. Thus, we conclude that the district court abused its discretion in awarding Benjamin only 2 weeks of summer parenting time absent evidence that it would be in the child's best interests.

As such, we modify the parenting plan to allow Benjamin 6 continuous weeks of parenting time during the child's school summer vacation. As currently required in the parenting plan, Benjamin must notify Jessica, in writing, not later than May 1 of each calendar year of the dates he will exercise his summer parenting time. All other provisions contained in the current

- 811 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SCHMEIDLER v. SCHMEIDLER
Cite as 25 Neb. App. 802

parenting plan with respect to summer parenting time remain the same.

Benjamin additionally argues that there is confusion with respect to the Christmas holiday as provided for in the parenting plan, and we agree. The plan defines the Christmas holiday as beginning at 5 p.m. on the day the child is released from school for the Christmas holiday and concluding at 12 p.m. on the day before the child returns to school. The plan then divides the Christmas vacation into two visitation periods: the first period runs from 5 p.m. on the day the child is released from school and ends at 9 a.m. on December 25, and the second period runs from 9 a.m. on December 25 and ends at 9 a.m. on January 1. The ending dates of the defined Christmas holiday and the second visitation period are inconsistent. We therefore modify the second visitation period to end at 12 p.m. on the day before the child returns to school. We otherwise affirm the parenting plan.

*Safety Plan.*

Benjamin argues that the district court erred in including the safety plan in the parenting plan, because it impermissibly grants Jessica unilateral authority to suspend Benjamin's parenting time upon her belief that he has been drinking. The Nebraska Supreme Court has previously upheld a provision in a parenting plan that restricted a parent's ability to consume alcohol during parenting time, or for a reasonable time prior thereto. See *Von Tersch v. Von Tersch*, 235 Neb. 263, 455 N.W.2d 130 (1990). A similar provision appears in the present parenting plan, and Benjamin does not argue error with its inclusion. Rather, it is the inclusion of the safety plan that Benjamin contests because of the authority it grants Jessica. We find merit in his argument and conclude that the district court's order giving Jessica the discretion to suspend Benjamin's parenting time is an unlawful delegation of the trial court's duty.

- 812 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
SCHMEIDLER v. SCHMEIDLER
Cite as 25 Neb. App. 802

[15] It is the responsibility of the trial court to determine questions of custody and visitation of minor children according to their best interests. This is an independent responsibility and cannot be controlled by the agreement or stipulation of the parties themselves or by third parties. *Deacon v. Deacon*, 207 Neb. 193, 297 N.W.2d 757 (1980), *disapproved on other grounds, Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002). In *Deacon v. Deacon, supra*, the Supreme Court reversed an order which granted a psychologist the authority to effectively determine visitation and to control the extent and time of such visitation, concluding that such an order was an unlawful delegation of the trial court's duty that could result in the denial of proper visitation rights of the noncustodial parent. As authority for its conclusion, the *Deacon* court cited *Lautenschlager v. Lautenschlager*, 201 Neb. 741, 272 N.W.2d 40 (1978). In *Lautenschlager*, the court observed:

> The rule that custody and visitation of minor children shall be determined on the basis of their best interests, long established in case law and now specified by statute, clearly envisions an independent inquiry by the court. The duty to exercise this responsibility cannot be superseded or forestalled by any agreements or stipulations by the parties.

201 Neb. at 743-44, 272 N.W.2d at 42.

The Supreme Court in *Deacon* specifically took note that the reasoning of *Lautenschlager* was being extended to third parties. The reasoning of *Deacon* has also been applied in other contexts. See, *In re Interest of D.M.B.*, 240 Neb. 349, 481 N.W.2d 905 (1992) (finding plain error in juvenile court's requirement that parent participate in support group and follow all directions of counselor); *Ensrud v. Ensrud*, 230 Neb. 720, 433 N.W.2d 192 (1988) (disapproving of district court order authorizing child custody officer to control custody and visitation rights of minor child); *In re Interest of Teela H.*, 3 Neb. App. 604, 529 N.W.2d 134 (1995) (holding that juvenile court order granting psychologist authority to determine time,

- 813 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SCHMEIDLER v. SCHMEIDLER
Cite as 25 Neb. App. 802

manner, and extent of parental visitation was improper delegation of judicial authority).

In *Barth v. Barth*, 22 Neb. App. 241, 851 N.W.2d 104 (2014), this court disapproved of the district court's order granting the child's father, the custodial parent, the discretion to withhold overnight visitation with the child's mother, the noncustodial parent, if she cohabits with someone of the opposite sex. We concluded that the rationale of the aforementioned cases applies with equal force when it is the custodial parent who is granted the authority to determine the visitation privileges of the noncustodial parent, because setting the time, manner, and extent of visitation is solely the duty of the court. The same holds true in the present case.

Jessica argues that the authority to determine whether Benjamin is permitted parenting time with the child is not delegated to her, but, rather, to Benjamin himself. She claims that the choice to drink belongs to Benjamin, knowing that if he does so, he is not entitled to visitation with the child. The same could be said for the parties in *Barth v. Barth, supra*, however. There, the choice to cohabit with someone of the opposite sex belonged to the mother, and she knew that if she did so, she would not be entitled to overnight visitation with the child.

Although we agree with Jessica that drinking is a conscious decision of Benjamin's, it is the sole responsibility of the district court to determine questions of visitation regarding the child according to her best interests, including the time, manner, and extent of visitation. This independent responsibility cannot be delegated to Jessica. More problematic is the fact that the safety plan allows Jessica to retrieve the child during Benjamin's parenting time if she "learns that [Benjamin] has been drinking alcoholic beverages." There is no requirement that such information be confirmed, which essentially permits Jessica to unilaterally terminate Benjamin's parenting time based on an unconfirmed belief that he has been drinking. This authority has the potential to become problematic, particularly

- 814 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SCHMEIDLER v. SCHMEIDLER
Cite as 25 Neb. App. 802

given the parties' history of conflict, and could result in the denial of proper visitation rights of the noncustodial parent. See *Deacon v. Deacon*, 207 Neb. 193, 297 N.W.2d 757 (1980), *disapproved on other grounds, Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002).

[16] In addition, we note that the safety plan requires Benjamin to report to Jessica if "he has slipped from his plan not to consume alcohol." There is no requirement that such consumption occur in the presence of the child or pose any danger to the child; he is required to report all alcohol consumption. The best interests of a child require a parenting arrangement which provides for a child's safety, emotional growth, health, stability, and physical care. See § 43-2923. Although limits on visitation are an extreme measure, they may be warranted where they are in the best interests of the children. *Aguilar v. Schulte*, 22 Neb. App. 80, 848 N.W.2d 644 (2014). Because the requirement to "self-report" is not confined to alcohol consumption during the time period in which he has or will have the child, it is an inappropriate provision to be included in the parenting plan. We therefore conclude that the district court abused its discretion in including the safety plan, which allows Jessica to determine whether Benjamin is entitled to visitation and prohibits Benjamin from consuming alcohol even outside the presence of the child. We therefore modify the parenting plan to remove the safety plan.

*Valuation and Division of Property.*

Benjamin challenges the district court's valuation and division of the parties' property in several respects. We modify the decree as explained below.

[17] Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide

- 815 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SCHMEIDLER v. SCHMEIDLER
Cite as 25 Neb. App. 802

the net marital estate between the parties in accordance with the principles contained in § 42-365. *Burcham v. Burcham*, 24 Neb. App. 323, 886 N.W.2d 536 (2016).

[18,19] Benjamin first challenges the classification of fencing supplies, a Shop-Vac, and some hay as marital assets. He claims these assets were his nonmarital property and should not have been included in the marital estate. Property which one party brings into the marriage is generally excluded from the marital estate. *Id.* The burden of proof to show that property is nonmarital remains with the person making the claim in a dissolution proceeding. *Id.*

Benjamin testified that he owned the fencing supplies prior to the marriage, and therefore, they are not marital property. In addition, Benjamin and both of his parents testified that the Shop-Vac was a Christmas gift to Benjamin from his parents, and his mother testified that the gift was given prior to the marriage. Jessica did not testify as to the fencing supplies or the Shop-Vac. Because the undisputed evidence establishes that these items are Benjamin's nonmarital property, the district court erred in classifying them as marital property. The court valued the Shop-Vac at $100 and the fencing supplies at $3,000. We therefore decrease Benjamin's portion of the marital assets by $3,100.

The evidence with respect to the hay is less clear. Benjamin testified that the parties did not own any hay at the time of the divorce. He later explained that the hay was food for the horses owned jointly by the parties. Jessica first testified that Benjamin has an unlimited supply of hay, but she later stated that they both had an unlimited supply of hay at the time they were married. She said the hay was a "bonus" from Benjamin's job. Because the record is unclear as to whether the hay was in existence as a separate asset or was Benjamin's separate property, he has not met his burden to show the property is nonmarital. We therefore affirm the inclusion of the hay in the marital estate.

- 816 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
SCHMEIDLER v. SCHMEIDLER
Cite as 25 Neb. App. 802

Finally, Benjamin asserts that the district court erred in valuing a Farm Service Agency (FSA) loan. The court accepted Jessica's value of $20,000 for the loan, but Benjamin claims it should be valued at $32,000.

As of March 2016, the FSA loan had an available balance of $32,000 total. Benjamin testified that initially, he used $22,000 of the available balance to purchase 11 cows at a cost of $2,000 each. He explained that he attempted to breed the cows to have calves in the spring of 2017, but sold the cows that did not become pregnant. He was advanced an additional $7,900 from the FSA loan to buy cows to replace those he had sold. This apparently occurred after he filed the complaint for dissolution of the marriage in May 2016.

[20] Marital debt includes only those obligations incurred during the marriage for the joint benefit of the parties. *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006). Thus, any increase in the debt amount that occurred after the parties separated was not for the joint benefit of the parties and should not be considered a marital debt. Thus, the additional $7,900 that Benjamin received after he filed for dissolution of the marriage does not constitute a marital debt.

Jessica valued the FSA loan at $20,000, but she did not provide evidence as to how she arrived at that value. Thus, accepting such value without supporting evidence constitutes an abuse of discretion. The undisputed evidence presented at trial supports assigning a value of $22,000 to the loan, and we therefore modify Benjamin's portion of the marital liabilities accordingly.

Based on the foregoing modifications, the total marital assets equal $60,577.41 and the marital debts equal $24,414.44. Due to our modifications, Benjamin's portion of the marital assets has decreased by $3,100 and his portion of the marital debts has increased by $2,000. Thus, the value of Benjamin's portion of the net marital estate now equals $20,612.97 and Jessica's portion equals $15,550. As a result,

- 817 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SCHMEIDLER v. SCHMEIDLER
Cite as 25 Neb. App. 802

we modify the equalization payment due from Benjamin to Jessica to a total of $2,531.

## CONCLUSION

We find no abuse of discretion in the district court's decision to decline to impose joint custody of the parties' minor child and award custody to Jessica. We modify the parenting plan, the valuation and distribution of the marital estate, and the equalization payment as explained above. The district court's order is otherwise affirmed.

Affirmed as modified.