IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

UHRICH V. UHRICH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

SARAH M. UHRICH, APPELLEE,

V.

CHRISTOPHER A. UHRICH, APPELLANT.

Filed January 22, 2019.    No. A-18-299.

Appeal from the District Court for Hall County: MARK J. YOUNG, Judge. Affirmed as modified.

Nicholas D. Valle, of Langvardt, Valle & James, P.C., L.L.O., for appellant.

John D. Icenogle, of Bruner Frank, L.L.C., for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Christopher A. Uhrich appeals the order of the district court for Hall County that dissolved his marriage, awarded custody and parenting time, and divided the marital estate. We affirm as modified as explained below.

## BACKGROUND

Sarah M. Uhrich, now known as Sarah M. Monie, and Chris were married in July 2013, and had been in a relationship for ten years prior to their marriage. The couple had two children together, Chris Jr., born in 2004, and Alexis, born in 2007. In February 2016, Sarah left the home she owned with Chris and filed for divorce a month later. She sought custody of the minor children and an equitable division of the parties' debt and property.

- 1 -

When Sarah left the family home in February 2016, she left the children with Chris. She initially rented an apartment and in September, purchased a house two blocks from Chris' home. She sought temporary custody of the children, but in September, the district court issued a temporary order placing the children in Chris' custody. A final hearing was scheduled for July 2017; however, prior to this hearing, Sarah filed a motion for continuance because the parties had not completed mediation or reached a settlement agreement. The July hearing was held, and was attended by both parties, and the district court set a final hearing for October. The court ordered Sarah and Chris to complete mediation regarding custody of the children before September.

At the final hearing Sarah was represented by counsel and Chris proceeded pro se. Sarah presented evidence and testimony regarding a mediated partial parenting plan between her and Chris; however, that plan did not resolve the issues of custody or regular and summer parenting time. Sarah also presented a proposed parenting plan that granted her legal custody of the children, and allowed for Chris to have four weeks of uninterrupted parenting time in the summers. The district court received both exhibits.

Sarah testified regarding the unsanitary conditions of Chris' house. She stated that Chris, her mother, and the children lived in a two bedroom house and that her mother was a hoarder. She offered photographs depicting her mother's possessions all over the home. Sarah also claimed that the children arrived at her house with lice. When she notified Chris of the problem, Chris denied that it had come from his house, but took immediate steps to clean the home. Finally, testimony was presented that the pets at Chris' home would often go to the bathroom in the house, creating unsanitary conditions.

According to Sarah, Chris did not foster a good relationship between her and the children. She claimed that Chris prevented her from coming inside the home when she came to get the children ready for school in the mornings, forcing her to wait outside for them. Chris placed stickers over Sarah's face on pictures inside the home and would send derogatory text messages to Sarah, or send derogatory messages about Sarah or her girlfriend to Chris Jr.

Sarah admitted to having a prior criminal conviction for distributing marijuana and methamphetamine. She further admitted to smoking marijuana with Chris prior to becoming pregnant with Chris Jr., but stated she stopped using marijuana after she became pregnant. Sarah testified that Chris continued to use marijuana and methamphetamine during their relationship. She also testified regarding Chris' work history during their relationship. After Chris Jr. was born, Chris was working for his father in Grand Island. When Sarah became pregnant with Alexis, Chris took a job as a painter in Lincoln. Chris then returned to Grand Island to work for his brother. Chris also presented evidence that for the past year and a half he had been working for a sprinkler company in Hastings.

Sarah admitted that the children seemed to be doing well in Chris' care, and she did not have any concerns leaving the children with him. However, she indicated that she had concerns that the children's hygiene was not being addressed at Chris' home, and she was concerned that Alexis was not getting herself clean or taking a shower while she was at Chris' house. Sarah also related concerns about Chris' mental health. She testified that she did not believe that Chris was emotionally stable and that it was affecting his relationship with the children. Sarah believed that Chris was attempting to be more of a friend to the children rather than a parent.

In addition to her own testimony, Sarah presented five witnesses who all testified regarding Sarah's relationship with her children. Each witness testified that Sarah was an excellent parent and adequately handled the children's mental and emotional health. Further, multiple witnesses testified that Sarah adequately disciplined the children.

Chris presented testimony from Bonnie Monie, Sarah's mother, regarding the condition of his house and his relationship with the children. Monie testified that Chris had a positive relationship with the children, and often helped them with their schoolwork. She also stated that Chris would appropriately discipline the children by taking away their electronics. According to Monie, there were occasions when the children would return from Sarah's house and would be very quiet or upset and have to be calmed down by Chris. Monie admitted that occasionally Chris would talk badly about Sarah or treat her poorly.

Regarding the division of the martial estate, Sarah submitted a property statement which valued the assets and debts acquired during the marriage. Part of this valuation included the house which Sarah owned with Chris, valued at $95,000, and she requested that Chris retain the house. The property statement also included debt on credit cards owed to two separate banks which accumulated during the marriage. Sarah also testified that several vehicles which were purchased during the marriage were in Chris' possession, while she maintained possession of one vehicle purchased after the couple separated.

The district court granted Sarah legal and physical custody of the children. It adopted the mediated parenting plan and portions of Sarah's proposed parenting plan. The court additionally divided the property between the parties, specifically ordering Chris to pay the credit card debt to the two banks. The court also noted that, because minimal evidence was presented regarding property and debt, it was concerned there may be additional marital debt not revealed at the hearing; therefore, the court ordered the parties to "each pay one-half of all marital debts".

Chris subsequently filed a motion for a new trial, arguing that he was not prepared for the trial because he did not receive Sarah's witness list and exhibits prior to the trial, and was not informed that the trial was a formal proceeding. A hearing was held on Chris' motion for a new trial, at which Chris was represented by counsel. At the hearing, Chris argued that the district court violated its own local rule by not holding a pretrial hearing, and that the court's decree, stating that each party would pay "one-half of all marital debt" would be difficult to enforce due to a lack of specificity.

The district court denied the motion for a new trial. It stated that a pretrial hearing was held in July 2017, and Chris appeared and represented himself. The court explained that, in a case where one of the parties is pro se, "entering an elaborate Pretrial Order would simply confuse the parties and constitute undue burden." The court also indicated that the property division between the parties was based on the evidence, or lack thereof, presented by the parties. The court did, however, enter an order nunc pro tunc to include a specific valuation date for additional marital debt. Chris timely appeals.

ASSIGNMENTS OF ERROR

Chris asserts, restated, that the district court erred and abused its discretion in (1) failing to hold a pretrial hearing in accordance with the district court's local rules, (2) awarding Sarah

custody of the minor children, (3) adopting the mediated parenting plan with modifications suggested by Sarah, and (4) ordering each party to pay one-half of the unidentified marital indebtedness.

## STANDARD OF REVIEW

Domestic matters such as child custody, division of property, child support, and alimony are entrusted to the discretion of trial courts. *Lasu v. Issak*, 23 Neb. App. 83, 868 N.W.2d 79 (2015). A trial court's determination on such issues is reviewed de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Id*. However, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses, and accepted one version of the facts rather than another. *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017). A judicial abuse of discretion exists if the reasons or rulings of the trial court are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

## ANALYSIS

*Pretrial Hearing.*

Chris argues that the district court erred by either not holding a required pretrial hearing or failing to give notice of a pretrial hearing, which prejudiced his ability to prepare for trial. Chris relies upon Rules of Dist. Ct. of Ninth Jud. Dist. 9-21(K) which states:

> Final Hearings/Pretrial Conferences. Final hearings in all dissolution cases shall be set by the court for 15 minutes unless the court is notified by either party that 15 minutes is not sufficient. When notified the trial will be excess of 1 hour, the court shall set the matter for pretrial conference and notify the parties of the date and time. Parties shall fully comply with the requirements of the court's pretrial order. In disputed custody cases, no pretrial shall be scheduled until mediation has been attempted.

We first note that Chris failed to properly preserve this assigned error. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. *Scurlocke v. Hansen*, 268 Neb. 548, 684 N.W.2d 565 (2004). Here, Chris did not object to the lack of a pretrial hearing before trial, nor did he request a continuance in order to hold a pretrial hearing. Furthermore, he did not object to any witnesses called by Sarah at trial. Thus, the issue of whether a pretrial hearing was properly held was not presented to the district court. Generally an issue not presented to the trial court may not be raised on appeal. *V.C. v. Casady*, 262 Neb. 714, 634 N.W.2d 798 (2001).

Nor do we find plain error in the court's procedures. A district court may exercise its inherent power to waive its own rules in appropriate circumstances where no injustice would result. *Kibler v. Kibler*, 287 Neb. 1027, 845 N.W.2d 585 (2014). Here, the record reveals that the district court held a pretrial hearing in July 2017. Although this occurred prior to mediation, no injustice resulted for either party. Both parties were present at the July hearing and were informed that the hearing was the final pretrial hearing. Furthermore, Chris could have served discovery requesting

the identity of witnesses and exhibits and he failed to do so. Therefore, he cannot now claim that he was prejudiced by the court's procedure. This assigned error is without merit.

*Child Custody.*

Chris next argues that the district court erred in granting Sarah sole legal and physical custody of the children. He asserts that the court erred in finding that his home was unsanitary, he was abusing marijuana, and had demonstrated an unstable pattern of employment. Therefore, he claims the court abused its discretion in finding that it was in the children's best interests to be placed in Sarah's custody. We disagree.

When custody of minor children is an issue in a proceeding to dissolve the marriage of the children's parents, custody is determined by parental fitness and the children's best interests. *Maska v. Maska*, 274 Neb. 629, 742 N.W.2d 492 (2007). When both parents are found to be fit, the inquiry for the court is the best interests of the children. *Id*. Here, the district court found that Chris was "generally a fit and loving parent;" thus, we consider the children's best interests.

Neb. Rev. Stat. § 43-2923(6) (Reissue 2016) provides:

In determining custody and parenting arrangements, the court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of:

(a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

(b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;

(c) The general health, welfare, and social behavior of the minor child;

(d) Credible evidence of abuse inflicted on any family or household member; and

(e) Credible evidence of child abuse or neglect or domestic partner abuse.

Courts may also consider factors such as general considerations of moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and the parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy educational needs of the child; and many other factors relevant to the general health, welfare, and well-being of the child. *Maska v. Maska, supra*.

Here, in awarding Sarah sole legal and physical custody of the children, the district court focused primarily on the unsanitary condition of Chris' home, his marijuana use, and his unstable pattern of employment. The record indicates that Chris, Sarah's mother, and the children live in a two bedroom home, with Chris and Chris Jr. sharing a room. Sarah testified that her mother was a hoarder, and presented pictures showing her mother's possessions all over the house. Additionally, the evidence revealed that the pets which lived at Chris' home would often go to the bathroom on the floor, where it would stay until it was cleaned up.

Sarah also testified regarding Chris' drug use. She claimed that he has used marijuana throughout their relationship, and she had observed him possessing marijuana in front of the

children. Moreover, a witness called by Sarah testified that on the occasions she interacted with Chris he would smell strongly of marijuana. Similarly, Sarah testified regarding Chris' past employment, which included relocations from Grand Island to Lincoln, back to Grand Island, and then to Hastings. In light of this testimony, and the lack of evidence presented by Chris, the court did not abuse its discretion in finding that Chris had an unsanitary home, abused marijuana, and did not demonstrate a stable pattern of employment.

While we agree with Chris' assertion that there is evidence in the record to support a finding that he was a capable father and cared for his children, we do not find that the district court abused its discretion in granting Sarah custody of the children. Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Schmeidler v. Schmeidler*, 25 Neb. App. 802, 912 N.W.2d 278 (2018). In fact, in contested custody cases, where material issues of fact are in great dispute, the standard of review and the amount of deference granted to the trial judge, who heard and observed the witnesses testify, are often dispositive of whether the trial court's determination is affirmed or reversed on appeal. *Id.*

Given the evidence presented at trial, our standard of review, and deference to the trial court's observation of the witnesses, we cannot find that the district court abused its discretion in granting Sarah custody of the children.

*Parenting Plan.*

In his third assigned error, Chris argues that the district court abused its discretion by adopting the mediated parenting plan with modifications suggested by Sarah. We disagree. However, we find ambiguity in the court's order adopting the parenting plan.

The court's order stated:

The parties reached a mediated parenting time plan which is adopted. While [Sarah] now wishes to modify the plan she agreed to, the Court finds there is not sufficient evidence to show a modification is in the children's best interests. Therefore, the Court adopts as the Parenting Plan Exhibit 37 except for summer and holiday visitation which is to be provided as set forth in Exhibit 38.

Exhibit 38, which was offered by Sarah, is a "Draft Partial Parenting Plan" prepared by the mediator. At the top of the document it states that the "DRAFT reflects the mediator's understanding of tentative agreements between the parties. It is not an agreement as described in Neb. Rev. Stat. 43-2941." The document does not contain signature lines for the parties. The mediated parenting plan left unresolved the issues of legal and physical custody and summer and holiday parenting time.

Exhibit 37 was a parenting plan proposed and offered by Sarah. It provided a schedule of parenting time during holidays, and allowed for four weeks of uninterrupted parenting time in the summers for the noncustodial parent. It also provided that Sarah would have sole legal and physical custody of the children.

The district court's order is ambiguous, in that the court states that it adopts the mediated parenting time plan (exhibit 38), but then states that "there is not sufficient evidence to show a

modification is in the children's best interests. Therefore, the Court adopts as the Parenting Plan Exhibit 37 except for summer and holiday visitation which is to be provided as set forth in Exhibit 38." As stated above, however, exhibit 38 left unresolved the issue of summer and holiday visitation.

Thus, we find plain error in the district court's order. Plain error exists where there is error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Davlin*, 263 Neb. 283, 639 N.W.2d 631 (2002).

Based on Sarah's requested changes to the mediated parenting plan and the language of the court's order, we find that exhibit 38, the mediated parenting plan is the plan the court adopted. Further, because the mediated parenting plan did not resolve holiday or summer parenting time, we find that the holiday and summer parenting time contained in exhibit 37, is adopted. Thus, exhibit 38 is adopted as modified by the holiday and summer parenting schedule contained in exhibit 37. All other provisions of exhibit 38 shall govern the parties' parenting time.

*Marital Debt.*

Chris' final assigned error asserts that the district court abused its discretion by entering an order which required the parties to each pay one half of unidentified marital indebtedness. Chris argues that because there was no evidence of any additional marital debt, the court's order requires further factual findings, and therefore is an abuse of discretion. We disagree.

A marital debt is one incurred during marriage and before date of separation by either spouse or both spouses for joint benefit of parties. *McGuire v. McGuire*, 11 Neb. App. 433, 652 N.W.2d 293 (2002). Here, the district court awarded certain property to each party, subject to the debts on that property. It further ordered Chris to pay credit card debt accumulated during the marriage to two separate banks. The court concluded: "Given the minimal evidence presented regarding property and debt, the Court is concerned that there may be outstanding marital debts not revealed by the evidence. The parties are order to each pay one-half of all marital debts." The court subsequently issued an order nunc pro tunc, setting March 11, 2016, as the date as to when the valuation of the property should be considered. Thus, any marital debt that Sarah and Chris accumulated was to be divided evenly between them and valued as of March 11.

Upon our review of the record, we find the district court did not abuse its discretion in issuing such an order. At trial, only Sarah presented evidence regarding marital property. During Chris' cross examination of Sarah, he indicated he disagreed with certain property valuations contained in her property statement, but did not present evidence of his own. We recognize that equitable property division is a three-step process. *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016). The first step is to classify the parties' property as marital or nonmarital. *Id*. The second step is to value the marital assets and marital liabilities of the parties. *Id*. The third step is to calculate and divide the net marital estate between the parties. *Id*. The ultimate test in determining the appropriateness of a property division is fairness and reasonableness as determined by the facts of each case. *Id*.

In light of the scant evidence presented regarding marital assets and liabilities, it was appropriate for the district court to order a catchall that any unidentified marital debt be divided evenly between the parties. Although this order may require additional factual findings at a later date as argued by Chris, a court that has jurisdiction to make a decision also has the power to enforce it by making such orders as are necessary to carry its judgment or decree into effect. *Dennis v. Dennis*, 6 Neb. App. 461, 574 N.W.2d 189 (1998). Importantly, we note the absence of any argument by Chris that unidentified marital debt actually exists. Therefore, we find no abuse of discretion in the court's order.

## CONCLUSION

Finding no abuse of discretion, we affirm the district court's decree but modify the parenting plan as set forth above.

AFFIRMED AS MODIFIED.