IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE ON BEHALF OF SAWYER R. V. DUSTY D.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA ON BEHALF OF SAWYER R., APPELLEE,

V.

DUSTY D., APPELLEE AND CROSS-APPELLANT, AND CHAD R., APPELLANT AND CROSS-APPELLEE.

Filed April 23. 2019.   No. A-18-354.

Appeal from the District Court for Dawson County: JAMES E. DOYLE IV, Judge. Affirmed as modified.

Brian W. Copley, of Heldt, McKeone & Copley, for appellant.

Bradley D. Holbrook and Elizabeth J. Chrisp, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellee Dusty D.

PIRTLE, BISHOP, and ARTERBURN, Judges.

PIRTLE, Judge.

## INTRODUCTION

Chad R. appeals from a decree entered in the district court for Dawson County which granted Dusty D. sole legal and physical custody of their child, Sawyer R., provided parenting time for Chad, and determined child support. Chad argues that the trial court erred in limiting his parenting time and by impermissibly delegating its authority. Dusty cross-appeals from the same decree, arguing that the trial court abused its discretion in ordering that each party would pay its own attorney fees. For the reasons that follow, we affirm as modified.

## BACKGROUND

Chad and Dusty each have a child from a prior relationship. They were not married, but lived together off and on prior to the birth of Sawyer. Before Sawyer was born, Chad had serious

- 1 -

issues with alcohol abuse and there were several instances of domestic abuse reported. However, he sought treatment through an in-patient treatment program and began to attend counseling. Sawyer was born in April 2014 and is the only child born to Chad and Dusty. When Sawyer was born, Chad and Dusty were living together and cared for the child together. After Dusty returned to work, Chad and also Dusty's mother would care for Sawyer during the day. By July 2015, Chad had quit attending counseling.

In April 2016, Chad decided to move to Texas to start a farming operation. During his time there he would return home every other weekend, and Dusty and Sawyer would visit Chad in Texas on the off weeks. However, Chad relapsed and began drinking again while in Texas. During one of Dusty's trips to Texas in August or September, she confronted Chad about his drinking. Dusty testified that Chad had been drinking and pushed her in the stomach during the confrontation. Dusty further stated that she could not trust Chad because he often lied about his drinking.

After the incident in Texas, Dusty moved out of Chad's Nebraska home in September 2016. Dusty reported that Chad showed up to her new home on four or five occasions, sometimes while he was intoxicated, and harassed her. Dusty also presented evidence of inappropriate text messages that Chad would send to her and her family after she moved out. Chad continued to consume alcohol off and on up until 5 weeks before the trial. At that time, he began counseling and planned to continue it in the future.

Chad filed a complaint to modify on March 30, 2017, on the basis that there had been a material change of circumstances since the previous order determining paternity and setting child support. Chad requested legal and physical custody, subject to parenting time, and child support. Dusty filed an answer and counterclaim to the complaint to modify on July 7, 2017. Dusty requested sole legal and physical custody, subject to parenting time, and child support. Chad, at some point prior to trial, stipulated that he would not be seeking custody of Sawyer and that the only issues at the hearing were to determine visitation and child support.

A hearing was held on July 18, 2017. The trial court entered a "Decree Establishing Custody, and Parenting Time and Decree Modifying Child Support" which granted sole physical and legal custody to Dusty, provided a graduated parenting plan for Chad, and set out child support obligations. The court decreed that Chad's parenting time should be supervised until Sawyer is age five or until the court determines supervision is no longer necessary. The court also found that a graduated parenting plan was appropriate in this case, limiting Chad's parenting time to 6 hours on Saturday and 6 hours on Sunday every other weekend with 8 hours of parenting time on specified holidays for the first 11 months of the parenting plan. Parenting time would then increase to 8 hours on Saturday and 8 hours on Sunday every other weekend with 10 hours of parenting time on specified holidays for the next 10 months of the parenting plan. Parenting time would then increase to 24 hours every other weekend from noon on Saturday to noon on Sunday with 10 hours on specified holidays for the next 9 months. The final step of the graduated parenting plan allows for parenting time from 8 a.m. on Saturday to 6 p.m. on Sunday with 10 hours of parenting time on specified holidays for the next 8 months. Thereafter, Chad would have parenting time on every other weekend, specified holidays, and, once Sawyer reaches age 7, summer parenting time. Chad appeals from the trial court's decree, and Dusty cross-appeals.

## ASSIGNMENTS OF ERROR

On appeal, Chad assigns that the trial court (1) abused its discretion in finding that the parenting plan was in the child's best interests and failing to allocate reasonable parenting time to him, and (2) erred in delegating to Dusty the authority to determine parenting time.

On cross-appeal, Dusty assigns that the trial court abused its discretion in failing to award her attorney fees.

## STANDARD OF REVIEW

Determinations regarding child custody, parenting time, and the award of attorney fees are matters initially entrusted to the discretion of the trial court, are reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Carlson v. Carlson*, 299 Neb. 526, 909 N.W.2d 351 (2018); *Hill v. Hill*, 20 Neb. App. 528, 827 N.W.2d 304 (2013).

In child custody cases, where the credible evidence is in conflict on material issues of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of facts rather than another. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

## ANALYSIS

*Material Change in Circumstances.*

As an initial matter, we note that custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Id.* A material change in circumstances means the occurrence of something which, had it been known to the court at the time of the initial decree, would have persuaded the court to decree differently. *Id.*

In the present case, the initial decree which established paternity did not establish custody or visitation as both parents and the child were residing together in the same home. Had the court known at that time the parents were living separately, the court may have decreed differently. Neither Chad nor Dusty dispute that the change in their relationship and residence is a material change in circumstances. Therefore, we find that there has been a material change in circumstances requiring modification in order to serve the best interests of the child.

*Parenting Time and Best Interests of Child.*

Chad argues that the court-ordered parenting plan failed to provide sufficient parenting time initially and that the graduated plan called for increments that are so long and limited in nature that it also acts to provide insufficient parenting time to foster a normal parental relationship, and, thus, was not in the best interests of Sawyer. We note that neither party challenges the trial court's finding that both parents are fit and that Dusty should have physical and legal custody subject to the challenged parenting time.

The court has discretion to set a reasonable parenting time schedule. *Schmeidler v. Schmeidler*, 25 Neb. App. 802, 912 N.W.2d 278 (2018). The determination of the reasonableness of a parenting plan is to be made on a case-by-case basis. *Id.* Parenting time relates to continuing and fostering the normal parental relationship of the noncustodial parent. *Id.* The best interests of

the children are the primary and paramount considerations in determining and modifying visitation rights. *Id.* Although limits on visitation are an extreme measure, they may be warranted where they are in the best interests of the children. *Aguilar v. Schulte*, 22 Neb. App. 80, 848 N.W.2d 644 (2014).

Neb. Rev. Stat. § 43-2923 (Reissue 2016) sets out the requirements for determining the best interests of the child. It states, in relevant part:

[T]he court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of the foregoing factors and:

(a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

. . . .

(c) The general health, welfare, and social behavior of the minor child;

(d) Credible evidence of abuse inflicted on any family or household member.

§ 43-2923(6). The Nebraska Supreme Court has expanded on the statute and held that when determining a child's best interests, courts:

may consider matters such as the moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and the parental capacity to provide physical care and satisfy the educational needs of the child.

*Schrag v. Spear*, 290 Neb. 98, 112, 858 N.W.2d 865, 877 (2015).

The trial court produced a detailed decree examining the following factors: the relationship of the minor child to each parent prior to the commencement of the action; the general health, welfare, and social behavior of the minor child; credible evidence of abuse inflicted upon a family or household member; the moral fitness of the parents, including their sexual conduct; the respective environments each parent offers; the emotional relationship between the child and the parents; the age, sex, and health of the child and parents; the effect on the child as a result of continuing or disrupting existing relationships; the attitude and stability of each parent's character; the capacity of each parent to provide physical care and to satisfy educational needs of the child; and other factors relevant to the general health, welfare, and well-being of the child.

Reviewing each of these factors and the evidence presented we diverge from the trial court's findings on only one factor. The trial court found that there was no evidence of any physical abuse inflicted on a family member or a household member by either parent. However, Dusty testified to at least two occasions where Chad became physical with her. During one visit in Texas, while arguing over whether Chad had been drinking or not, Dusty testified that Chad shoved her in the stomach/kidney area and prevented her from entering her vehicle. A second incident occurred in the home where Dusty reported being slapped in the face while she was holding Sawyer. We include this factor in our review of the best interests of the child.

In addition to these incidents, we note that the trial court identified issues with Chad's truthfulness, finding it was severely impaired, and his verbal abuse of Dusty and Dusty's other child from a previous relationship. The trial court also considered Chad's significant issues with alcohol addiction and noted the efforts he was making toward addressing this issue, finding that his recovery was still in the early stages.

Based on these factors, the trial court found that it was in the child's best interests to award legal and physical custody of Sawyer to Dusty subject to Chad's parenting time. Chad compares the present parenting plan to the plan presented in *Thompson v. Thompson*, 24 Neb. App. 349, 887 N.W.2d 52 (2016). In *Thompson*, we generally found that the father was an excellent parent who desired to spend as much time as possible with the child. Despite the testimony that there had been incidents of abuse, the order focused on the poor communication between the parties as justification for the limited parenting time. *Id*. We determined that the court had abused its discretion in that case because the limited parenting time did not correspond to the best interests of the child, but rather was based on the communication between the parents. *Id*.

The present case is distinguishable from *Thompson*. While the communication between the parties in this case is certainly strained as it was in *Thompson*, the trial court here did not base its determination of parenting time solely on the parents' communication. Rather it was based on the entirety of the best interest factors and focused on the wellbeing of the child. Given the nature of Chad's issues with alcohol and domestic abuse, and giving deference to the trial court as it observed the witnesses and heard the testimony, we cannot say that the trial court abused its discretion in limiting Chad's parenting and then allowing for gradual increases. Therefore, we find that the decree of the trial court should be affirmed in this respect.

*Delegation of Authority.*

Chad argues that the court erred in delegating its authority to determine parenting time with the following language:

> If dad misses parenting time opportunities due to his fault, the graduated design of the parenting plan is undermined and mom shall be entitled to require the recommencement of the graduated parenting time until such time as dad and the minor child become sufficiently acquainted so the minor child is secure and does not exhibit signs of anxiety in dad's presence.

Within this provision are two problematic propositions. The first is the mother's right to recommence graduated parenting time when the father misses parenting time due to his "fault." The second is when this right ceases to exist, namely, that it ends when the child becomes "sufficiently acquainted" with Chad.

It is the responsibility of the trial court to determine questions of custody and visitation of minor children according to their best interests. *Schmeidler v. Schmeidler*, 25 Neb. App. 802, 912 N.W.2d 278 (2018). This is an independent responsibility and cannot be controlled by the agreement or stipulation of the parties themselves or third parties. *Deacon v. Deacon*, 207 Neb. 193, 297 N.W.2d 757 (1980), *disapproved on other grounds, Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002).

We dealt with a similar issue in *Schmeidler*, where the parenting plan gave the custodial parent the right to alter parenting time. In *Schmeidler*, the noncustodial parent had issues with alcohol abuse and a safety plan was included in the parenting plan which allowed the custodial parent to end parenting time if she learned that the noncustodial parent had consumed alcoholic beverages without confirming that fact. We found that allowing the custodial parent the right to end parenting time was an impermissible delegation of the court's authority. *Schmeidler v. Schmeidler, supra*. In addition, we found the provision in that case could lead to the denial of visitation rights because of the ill-defined triggers for the action which could have been abused by the custodial parent to deny visitation by the noncustodial parent. *Id*.

As in *Schmeidler*, the parenting plan in this case allows one of the parents to unilaterally reduce parenting time, creating an impermissible delegation of the court's authority. In addition, the parenting plan provides an uncertain trigger for when the parenting time should be reduced as "fault" and "sufficiently acquainted" are not clearly defined and it is left for Dusty to determine when those triggers are met, creating the potential for abuse. As such, we find that this provision was an abuse of the trial court's discretion. Therefore, Appendix A: Parenting Plan, attached to the court's November 3, 2017, decree, shall be modified to remove the following language:

> If dad misses parenting time opportunities due to his fault, the graduated design of the parenting plan is undermined and mom shall be entitled to require the recommencement of the graduated parenting time until such time as dad and the minor child become sufficiently acquainted so the minor child is secure and does not exhibit signs of anxiety in dad's presence.

The remainder of the parenting plan is affirmed.

*Attorney Fees.*

Dusty argues on cross-appeal that the trial court abused its discretion in ordering that each party should pay their own attorney fees. In determining whether an award of attorney fees should be made a court shall consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). Courts can also award attorney fees for conduct during the course of litigation which is vexatious, unfounded, and dilatory, such that it amounts to bad faith. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018).

We acknowledge that Chad, at some point prior to trial, stipulated that he would not be seeking custody of Sawyer and that the only issues at the hearing were to determine visitation and child support. However, it does not appear that Chad unjustly prolonged or acted in bad faith, as suggested by Dusty, as visitation and child support were at issue, which required effectively the same evidence as would have been required if custody had also been at issue. While contentious, these issues were relatively simple and it does not appear that they were novel in any way. As such, we cannot say that the trial court abused its discretion in ordering each party to pay their own attorney fees and, therefore, we affirm the decree of the trial court in this regard.

CONCLUSION

In conclusion, we find no abuse of discretion in the trial court's determination of parenting time and the decision to not award attorney fees. As to the delegation of authority, we modify the parenting plan consistent with this opinion. The trial court's decree is otherwise affirmed.

AFFIRMED AS MODIFIED.