IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

DOWDING V. DOWDING

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TIMOTHY J. DOWDING, APPELLEE,

V.

CAMEO D. DOWDING, APPELLANT.

Filed May 14, 2019.    No. A-18-339.

Appeal from the District Court for Otoe County: MICHAEL A. SMITH, Judge. Affirmed.

David V. Chipman, of Monzón, Guerra & Associates, for appellant.

Nicholas M. Froeschl and Anne E. Brown, of Morrow, Poppe, Watermeier & Lonowski, P.C., L.L.O., for appellee.

PIRTLE, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Cameo D. Dowding appeals the decree dissolving her marriage to Timothy J. Dowding. She contends that the district court erred in awarding Timothy sole legal and physical custody of their son; erred in the parenting plan; and erred by denying her request to amend her pleadings to challenge Timothy's acknowledgement of paternity. Having considered and rejected Cameo's assigned errors, we affirm the district court's order.

## II. STATEMENT OF FACTS

Timothy and Cameo were married in September 2013. Prior to their marriage, they had one child together, Treton, who was born in 2010. Timothy was listed on the birth certificate as Treton's father. The day after Treton's birth, both he and Cameo signed an "Acknowledgment of Paternity" identifying Timothy as Treton's father, which document was notarized. The parties

- 1 -

separated in July 2016 and entered into an informal agreement wherein they would share custody of Treton 50/50.

In February 2017, Timothy filed a complaint to dissolve his marriage to Cameo and requested legal and physical custody of Treton. He also filed a motion for ex parte custody of Treton alleging that Cameo was not following the parties' agreement that Treton would attend school in Syracuse, Nebraska; that Cameo had failed to take Treton to school, was refusing to return him, and stated that she was going to enroll him in school in Lincoln, Nebraska; and that Cameo was living in a situation that was dangerous to Treton. The court granted Timothy's motion and entered an ex parte order awarding temporary physical custody of Treton to Timothy. Shortly thereafter, Cameo filed an answer alleging that Treton was not Timothy's child and requested that she be awarded sole legal and physical custody of Treton. That same day, Cameo filed a Motion for Genetic Testing. Timothy filed a motion for temporary custody and a reply to Cameo's counterclaim in which he "affirmatively allege[d] that he has, at all times, been the biological father of Treton . . . or has legally stood in the position of the natural father of the child, and therefore, is legally established as the child's natural father pursuant to the Acknowledgment of Paternity."

The court entered a temporary order awarding sole legal custody to Cameo and awarding the parties joint physical custody. The court further found that it was in Treton's best interests to continue to attend Syracuse Elementary School through the end of the present school year. The court also denied Cameo's motion for genetic testing. The court specifically found that

> *Cesar* [*C.*] *v. Alicia* [*L.*], 281 Neb. 979, [800 N.W.2d 249 (2011),] is persuasive, and further that until such time as [Cameo] appropriately raises fraud, duress, or material mistake of fact regarding the written Acknowledgement of Paternity, that the Acknowledgement submitted by [Timothy] is considered a legal finding, and any genetic testing is not relevant to these proceedings.

On October 24, 2017, Cameo filed a "Rescission of Acknowledgment of Paternity" in which she "rescinds her signature that appears on the Acknowledgement of Paternity" and "further claims that said signature indicates a material mistake of fact that has now been corrected by the DNA results that indicate that the biological father of Treton J. Dowding is [name omitted]." Timothy filed a motion to strike Cameo's rescission of acknowledgement of paternity "for the reasons that [Timothy] has already signed the Acknowledgment of Paternity and . . . is legally established as the father of the minor child, said pleading is irrelevant, moot and is not a proper pleading or procedure before the Court in the present matter."

## 1. TRIAL

Trial was held on November 15, 2017. The court initially took up the issue of Cameo's request to rescind her signature on the Acknowledgement of Paternity. The district court stated:

> I don't know that simply the matter that someone else is the father than what they thought they were is sufficiently material mistake of fact . . . . So just the fact you've got a test I'm not sure is sufficient. But regardless of where we're at today is -- just a -- filing the rescission is, in my view under the Rules of Pleading in Civil Cases, not a proper way at least to raise an issue for trial. And -- So that isn't sufficient to bring it into . . . today's

trial. We did have a series of -- an Order regarding preparation for trial regarding that. It wasn't raised as part of that issue or any submission to the court. The filing of the rescission is not a pleading to do that in my view as done in this case.

Accordingly, the court granted Timothy's motion to strike Cameo's rescission of the Acknowledgement of Paternity. Additionally, prior to the start of the trial, Cameo made an oral motion to continue the trial to amend her pleadings to include paternity testing, which motion was denied by the district court.

The witnesses testifying at trial included: Cameo; Timothy; Sharon Dowding, Timothy's mother and Treton's paternal grandmother; Sally Agena, Treton's guidance counselor; Kathleen Weiler, Treton's second grade teacher; and Sarah Abu-Hamda, Cameo's friend. The evidence established that, at the time of the trial, Treton was 7 years old and in second grade at Syracuse Public Schools where he had also attended kindergarten and first grade.

(a) Cameo

Cameo testified that she lives in an apartment in Lincoln with her boyfriend and his son. Treton is with her half the time and her other two children from a previous relationship visit every other weekend and the majority of the summer.

Cameo admitted that she moved from the previous house after her landlord gave her a 3-day notice for failure to pay rent. Cameo testified that, although she paid the rent in full, she had to leave the house anyway because she had already received a notice from her landlord that he would not be renewing her lease agreement because he was putting the home on the market. Cameo also admitted that there was a dispute with the landlord regarding some damage done to the property.

At the time of trial, Cameo was unemployed. Cameo testified that she is not seeking employment because she was waiting for a determination regarding custody of Treton. Her most recent employment was a full-time job at Union Title where she was employed from November 2016 until she was fired in August 2017. Her previous work history is as follows:

| Time Employed | Employer | Reason for Leaving |
| --- | --- | --- |
| 2009-2012 | Not employed | |
| Oct. 2012-March 2013 | Outback Steakhouse | Quit |
| March 2013-June 2013 | Trackhouse | Quit |
| Aug. 2013-May 2014 | Casey's | Quit |
| Oct. 2014-Aug. 2015 | Black Hills Energy | Fired |
| April 2016-Nov. 2016 | Baxter Auto Body | Quit |

Cameo was fired from her job at Black Hills Energy because she was missing work to engage in a relationship with her current boyfriend who was a co-worker.

Cameo testified that, if she is granted custody of Treton, they would opt in to the West Lincoln school district. However, Cameo had not filed the paperwork to opt into the school district, she had not met with the principal about the likelihood of Treton being able to opt into that school district, and she had not called the school district to find out who Treton's teacher would be. If Treton was unable to opt into the West Lincoln school district, Cameo thought he would attend

Roper Elementary School, but she had not met with the principal or found out who Treton's teacher would be at that school.

Cameo admitted that her drivers' license had been suspended previously; that she entered a plea agreement in 2013 wherein she pled guilty to shoplifting and a charge of negligent child abuse was dismissed. Further, she admitted that she had been charged with third degree domestic assault in which Timothy was the victim and she ended up pleading to an amended charge of disturbing the peace. Finally, Cameo admitted that, in 2009, she was charged with concealing merchandise.

Cameo testified that Treton's school day starts at 6:40 a.m. and ends at 8:30 p.m. She described his routine as follows:

> During a school day we get up. Takes a few times. . . . He's stubborn in the morning, but he will get up, we'll get dressed, and we brush our teeth. And then we get his coat and backpack, grab his lunch. He usually eats breakfast bars or doughnuts if we're eating in the car or he will have a bowl of cereal or [Eggo waffles] at home.
>
> . . . .
>
> [After Treton is finished with school,] I pick him up from . . . the bus at 3:45. We drive back to Lincoln. And on our drive he will read to me and he tells me about his day. And then we discuss what we're gonna have for dinner, if he has homework, what [sic] we're gonna do that. When we get home he does his homework and I usually start dinner a little after that.

According to Cameo, after Treton is done with homework and before he goes to bed, they watch Netflix, play with Legos, play Disney Infinity, and they read a special book almost every night before bed. On weekends, they have gone to the library, Defy Gravity, go to "Lost in Fun," go to the zoo or the park where Treton can ride his bicycle or his skateboard.

Cameo testified that Treton has a close relationship with her other children and it benefits him to spend time with his half-brothers and half-sister. However, Cameo admitted that Treton has done well attending school in Syracuse, has friends at school, and that Treton's grandmother, Sharon, works at the school. Additionally, Cameo admitted that Sharon has provided childcare for Treton and assisted in transporting Treton to and from visits and never charged for childcare she provided even after the parties separated.

### (b) Timothy

Timothy testified that he has resided in Syracuse at his current address since May 2015. His home is a three-bedroom home in which Treton has his own bedroom and his own play area. Timothy testified that Cameo never paid any of the mortgage payments, taxes, utilities, or bills associated with the home.

Timothy has been employed at BNSF Railway since 2014 and provides health insurance for Treton and Cameo. Timothy testified that his typical work hours are Monday through Friday from 7 a.m. to 4 p.m. with some flexibility to work from home occasionally. Since August 2016, his job has required him to be away overnight three times.

Timothy testified that Treton is doing well in Syracuse, getting good grades, and has lots of friends. Timothy has stayed in touch with Treton's teacher regarding Treton's progress, he

attended parent/teacher conferences, and he consults with the school's principal and guidance counselor occasionally to keep track of how Treton is doing at school. He described the activities that he and Treton engage in:

> We enjoy going on bike rides a lot. We go to the school, which is a couple blocks away, play on the playground, play with his other friends that are there. We go to the park, which is across the street from our house, and again, play with children . . . that are there. . . . He loves to read. It's kind of changed, where I was reading to him a lot all the time and now he reads to me. So we like to read together. We do his homework together. . . . We enjoy going fishing, kayaking, and we both love video games and arcade games. So these are all things that . . . we're both passionate about, . . . we both enjoy. So it's really easy to -- to enjoy time with him.

Timothy testified that placing primary physical custody of Treton with him was in Treton's best interests because Cameo does not provide a stable environment, her relationship and home life are unstable, she has an inconsistent work history, she is unable to financially care for Treton, she does not spend quality time with Treton, and does not engage with him during the periods of time when he is in her care. Further, Timothy testified that he became concerned with the number of times during the 2016/2017 school year that Cameo called the school to report that Treton was either ill or unavailable to attend.

### (c) Sharon Dowding

Timothy's mother and Treton's grandmother, Sharon Dowding, testified that she came out of retirement to take a job as a special education aide with Syracuse Public Schools to help Timothy provide for Treton and so that she would be present before and after school. Sharon sees Treton every day at school and cares for Treton whenever Timothy needs a babysitter, in addition to caring for Treton during the summer months. Prior to the parties' separation, Sharon provided care for Treton and Cameo's two other children when Cameo requested, especially during the summer months. For approximately 4 or 5 months after the parties' separation, during Cameo's parenting time, Sharon met Cameo in the morning and drove Treton to school so that Cameo would not have to drive an extra 36 miles roundtrip. Additionally, after school, Sharon brought Treton home with her and, when Timothy got off work, he drove Treton to a designated place to meet Cameo. Sharon testified that she was still willing to provide transportation if Cameo needed her to.

Sharon testified that Timothy and Treton are:

[b]est buds. [They've] got a really strong father/son relationship. They ride bikes, have helmets. They do the roller-blading. He lives across the street from the park in Syracuse. He's on the farm. We own a family farm in Otoe County, and he comes with his dad and helps harvest, rides in the combine, and did the grain cart with the trailer, helped plant. They go to sprint car races together. Defy Gravity, where they jump together. He's taken him to our bible school in Bennet -- at our church, Bennet Community Church. He's attended that the last three years. . . . They're just happy together. They're two peas in a pod . . . .

Further, Sharon had never observed any interactions between Timothy and Treton that caused her concern, never saw or heard Timothy threaten Treton in any way, and had never seen Timothy act physically violent toward Treton. However, Sharon testified that she did observe interactions between Cameo and Treton that caused her concern such as spanking or hitting Treton inappropriately.

Further, Sharon testified that she and Treton have a very close relationship, she enjoys spending time with him, and "[h]e brings a smile to my face every time I see him." According to Sharon, Treton is happy at school and has "lots of friends at school."

### (d) Sally Agena

Sally Agena testified that she is the Syracuse Public Schools' guidance counselor for kindergarten through the eighth grade. She described Treton as happy, "spirited," "chatty," with a "good heart," and "friendly." Agena testified that she has had telephone conversations with Timothy and he appeared to be engaged and concerned for Treton's well-being.

### (e) Kathleen Weiler

Kathleen Weiler testified that she is Treton's second grade teacher. Weiler described Treton as "a very smart little guy" who is an average to above-average student and is friendly and well-liked. She expressed no concerns regarding any behavioral issues and stated that Treton appeared to be happy. She testified that both Timothy and Cameo appeared to be interested and concerned with Treton's school performance and she had not observed any interaction with either parent that caused her concern.

### (f) Sarah Abu-Hamda

Sarah Abu-Hamda testified that she has been friends with Cameo for over 1½ years. She testified that Cameo is "a wonderful mother," that Cameo and Treton "goof around a lot," and they are "always cuddling on the couch." She also testified that Treton always seems to be clean and well-fed and that Treton has "always been really well-mannered." Finally, she testified that she has not observed anything that would raise concerns regarding Cameo's treatment of Treton.

### 2. DISTRICT COURT ORDER

In March 2018, the district court entered an order dissolving the parties' marriage. The court noted that "[a]s a preliminary matter, [Timothy] had previously filed a motion to strike [Cameo]'s Rescission of Acknowledgment of Paternity. The motion was granted and the Defendant's Recession of Acknowledgement of Paternity was ordered stricken." The court further stated:

> Prior to the parties marriage, one minor child was born namely, [Treton], born 2010. The Court did receive into evidence a Certificate of Live Birth showing that [Timothy] was listed as the minor child's biological father, and an Acknowledgement of Paternity previously executed by [Timothy] acknowledging that he was the father of the minor child. Cameo contends that said Acknowledgement of Paternity should be vacated or set aside. Cameo's position is without merit. An unchallenged Acknowledgement of Paternity is a finding that the individual who signed as father is in fact the legal father. *Cesar C. v. Alicia L.*, 281 Neb. 979, [800] N.W.2d 249 (2011).

Regarding custody, the district court found that both Timothy and Cameo were fit and proper parents and that Treton had established a close relationship with both parents. Further, the court noted:

> While it is apparent that it is difficult for the parties to cooperate with each other, the evidence also demonstrates that the child has continued to thrive in his current environment in Syracuse residing with [Timothy]. The stability of that arrangement, as well as the availability of extended family members to assist in parenting, contrasts with the lack of stability in [Cameo]'s residence and family living arrangements. This should not be taken as a disparagement of [Cameo], as some of the circumstances contributing to these conditions are not of her making. However, the Court must consider the best interest of the minor child, and the Court finds that, based upon the evidence provided, the best interest of the minor child . . . requires that sole legal and physical custody be awarded to [Timothy], subject to [Cameo]'s reasonable right of parenting time.

The court awarded Cameo parenting time every other weekend beginning on Friday at 6 p.m. and ending on Sunday at 6 p.m., plus alternating holidays and 15 days of vacation time. Cameo was ordered to pay child support of $440 per month.

## III. ASSIGNMENTS OF ERROR

Cameo's assignments of error, consolidated and restated, are that the district court erred in: (1) denying her request to amend her pleadings to challenge Timothy's acknowledgement of paternity; (2) awarding sole legal and physical custody of Treton to Timothy; and (3) in its award of parenting time.

## IV. STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Coufal v. Coufal*, 291 Neb. 378, 866 N.W.2d 74 (2015); *Kashyap v. Kashyap*, 26 Neb. App. 511, 921 N.W.2d 835 (2018). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Coufal v. Coufal, supra*; *Kashyap v. Kashyap, supra*.

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Flores v. Flores-Guerrero*, 290 Neb. 248, 859 N.W.2d 578 (2015); *Kashyap v. Kashyap, supra*.

In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015); *Kashyap v. Kashyap, supra*.

An appellate court reviews a district court's denial of a motion for leave to amend a complaint for an abuse of discretion. *Eagle Partners v. Rook*, 301 Neb. 947, 921 N.W.2d 98 (2018).

## V. ANALYSIS

### 1. ACKNOWLEDGEMENT OF PATERNITY

Cameo contends that the issue of Timothy's paternity and the mistake of recognizing him as Treton's father was pled but was not pled with sufficient particularity as required by Neb. Ct. R. Pldg. § 6-1109. She contends that the district court erred in denying her request to amend her pleadings to challenge Timothy's acknowledgement of paternity.

A district court's denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the nonmoving party can be demonstrated. *Eadie v. Leise Properties*, 300 Neb. 141, 912 N.W.2d 715 (2018).

The evidence at trial established that the day after Treton's birth, both Timothy and Cameo signed an acknowledgement of paternity stating that Timothy was Treton's father. This acknowledgement was duly notarized.

Pursuant to Neb. Rev. Stat. § 43-1412.01 (Reissue 2016):

> An individual may file a complaint for relief and the court may set aside a final judgment, court order, administrative order, obligation to pay child support, or any other legal determination of paternity if a scientifically reliable genetic test performed in accordance with sections 43-1401 to 43-1418 establishes the exclusion of the individual named as a father in the legal determination . . . . A court shall not grant relief from determination of paternity if the individual named as father (1) completed a notarized acknowledgment of paternity pursuant to section 43-1408.01, (2) adopted the child, or (3) knew that the child was conceived through artificial insemination.

Further, pursuant to Neb. Rev. Stat. § 43-1409 (Reissue 2016):

> The signing of a notarized acknowledgment, whether under section 43-1408.01 or otherwise, by the alleged father shall create a rebuttable presumption of paternity as against the alleged father. The signed, notarized acknowledgment is subject to the right of any signatory to rescind the acknowledgment within the earlier of (1) sixty days or (2) the date of an administrative or judicial proceeding relating to the child, including a proceeding to establish a support order in which the signatory is a party. *After the rescission period a signed, notarized acknowledgment is considered a legal finding which may be challenged only on the basis of fraud, duress, or material mistake of fact with the burden of proof upon the challenger, and the legal responsibilities, including the child support obligation, of any signatory arising from the acknowledgment shall not be suspended during the challenge, except for good cause shown.* Such a signed and notarized acknowledgment or a certified copy or certified reproduction thereof shall be admissible in evidence in any proceeding to establish support.

(Emphasis supplied.)

Here, Timothy signed a notarized acknowledgement of paternity which has not been challenged by Cameo. "[T]he proper legal effect of a signed, unchallenged acknowledgment of paternity is a finding that the individual who signed as the father is in fact the legal father." *Cesar*

- 8 -

*C. v. Alicia L.*, 281 Neb. 979, 985, 800 N.W.2d 249, 254 (2011). Thus, pursuant to § 43-1412.01(1), Timothy is Treton's legal father. Consequently, in order to challenge paternity and render genetic testing relevant to the proceedings, Cameo needed to overcome the acknowledgment that she and Timothy had both signed which established that Timothy was Treton's legal father.

The Nebraska Supreme Court in *Cesar C. v. Alicia L.*, 281 Neb. 979, 989, 800 N.W.2d 249, 256 (2011) stated:

> Section 43-1409 provides that an acknowledgment that has become a legal finding of paternity "may be challenged only on the basis of fraud, duress, or material mistake of fact with the burden of proof upon the challenger." Under § 43-1409, Alicia had the burden to prove fraud, duress, or material mistake of fact with regard to the execution of the acknowledgment. Alicia made no allegation of fraud, duress, or material mistake and therefore did not properly challenge the acknowledgment under § 43-1409. The acknowledgment remained a legal finding, and Cesar had the legal status as father. Because such legal status had been established and the acknowledgment was unchallenged, the results of genetic testing were not relevant to any issue properly raised in the case and the district court should not have ordered or considered genetic testing. See § 43-1412.01.

The court went on to quote from a case from the Indiana Court of Appeals:

> In *In re Paternity of H.H.,* 879 N.E.2d 1175, 1178 (Ind. App. 2008), the Indiana Court of Appeals concluded that "once a mother has signed a paternity affidavit, she may not use the paternity statutes to deprive the legal father of his rights, even if he is not the biological father." The court reasoned that "a woman always has the information necessary to question paternity prior to signing the affidavit. A man, however, could easily sign an affidavit without awareness of the questionable nature of his paternity." *Id.* The court noted that the legal father was "the only father [the child] has ever known . . . was there when she was born, [and] has provided for her financially and emotionally since her birth," and the court concluded that "[c]hanging his legal status at this late date is not in the best interests of" the child, the legal father, or the State. *Id.*
>
> We agree with these authorities that not only do the applicable statutes require that an unchallenged acknowledgment have the effect of making the acknowledged father the legal father but that the best interests of the child are ordinarily served by certain parentage determinations and continuity in the child's life.

*Cesar C. v. Alicia L.*, 281 Neb. 979, 991, 800 N.W.2d 249, 258 (2011). See, also, *Matter of Gendron*, 157 N.H. 314, 320, 950 A.2d 151, 155 (2008) ("the unchallenged acknowledgement established the father's paternity, thus dispensing with the need for additional proof of paternity. Therefore, genetic marker testing was irrelevant to determining the father's request for custody").

Cameo, having alleged a "material mistake of fact that has now been corrected by the DNA results," has only alleged issues which are not relevant to any issue properly raised in this case and amendment of her pleading was futile. As such, the district court did not abuse its discretion in denying her motion for leave to amend her pleading.

## 2. LEGAL AND PHYSICAL CUSTODY

Cameo contends that the district court erred in awarding Timothy sole legal and physical custody of Treton to Timothy.

Here, the district court found that both Timothy and Cameo were fit parents. When custody of a minor child is an issue in a proceeding to dissolve the marriage of the child's parents, child custody is determined by parental fitness and the child's best interests. *Maska v. Maska*, 274 Neb. 629, 742 N.W.2d 492 (2007); *Schmeidler v. Schmeidler*, 25 Neb. App. 802, 912 N.W.2d 278 (2018). When both parents are found to be fit, the inquiry for the court is the best interests of the children. *Maska v. Maska, supra*; *Schmeidler v. Schmeidler, supra*.

When deciding custody issues, the court's paramount concern is the child's best interests. *Kashyap v. Kashyap*, 26 Neb. App. 511, 921 N.W.2d 835 (2018); *Citta v. Facka*, 19 Neb. App. 736, 812 N.W.2d 917 (2012). Neb. Rev. Stat. § 43-2923(6) (Reissue 2016) states, in pertinent part:

> In determining custody and parenting arrangements, the court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of the foregoing factors and:
>
> (a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;
>
> (b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;
>
> (c) The general health, welfare, and social behavior of the minor child;
>
> (d) Credible evidence of abuse inflicted on any family or household member . . . ; and
>
> (e) Credible evidence of child abuse or neglect or domestic intimate partner abuse.

Other pertinent factors include the moral fitness of the child's parents, including sexual conduct; respective environments offered by each parent; the age, sex, and health of the child and parents; the effect on the child as a result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and parental capacity to provide physical care and satisfy educational needs of the child. *Robb v. Robb*, 268 Neb. 694, 687 N.W.2d 195 (2004); *Kashyap v. Kashyap, supra*.

Further, courts typically do not award joint legal custody when the parties are unable to communicate effectively. *Schmeidler v. Schmeidler, supra*. Where the parties are unable to communicate and trust one another, joint decisionmaking by the parents is not in the child's best interests. *Id*.

In this case, both parties testified that they are unable to communicate effectively with each other and both parties expressed that they would be unable to share parenting time equally with Treton and effectively co-parent. Further, the evidence established that Treton is a well-mannered, happy child who has many friends and family members in and around Syracuse. Although both Timothy and Cameo obviously love Treton very much as is evidenced by the time and care that both parents provide for him, Timothy provides Treton with a more stable living situation. Cameo has frequently changed jobs and, at the time of trial, was unemployed. Conversely, Timothy has

maintained employment with BNSF Railway since 2014. His work schedule is Monday through Friday 7 a.m. to 4 p.m. with infrequent overnight travel. Timothy has an established familial network that has assisted in caring for Treton. Given the evidence presented at trial, our standard of review, and deference to the trial court's observation of the witnesses, we cannot find that the district court abused its discretion in awarding sole legal and physical custody of Treton to Timothy.

### 3. PARENTING TIME

Cameo next contends that the district court erred in its award of parenting time. Specifically, she contends that the court erred in awarding her only two overnights for every two weeks of parenting time and in awarding her only 15 days of "vacation" time.

The trial court has discretion to set a reasonable parenting time schedule. *Schmeidler v. Schmeidler*, 25 Neb. App. 802, 912 N.W.2d 278 (2018); *Thompson v. Thompson,* 24 Neb. App. 349, 887 N.W.2d 52 (2016). The determination of the reasonableness of a parenting plan is to be made on a case-by-case basis. *Schmeidler v. Schmeidler, supra; Thompson v. Thompson, supra.* Parenting time relates to continuing and fostering the normal parental relationship of the noncustodial parent. *Schmeidler v. Schmeidler, supra*; *Thompson v. Thompson, supra*. The best interests of the children are the primary and paramount considerations in determining and modifying visitation rights. *Schmeidler v. Schmeidler, supra*; *Thompson v. Thompson, supra*. Although limits on visitation are an extreme measure, they may be warranted where they are in the best interests of the children. *Schmeidler v. Schmeidler, supra*; *Aguilar v. Schulte,* 22 Neb. App. 80, 848 N.W.2d 644 (2014).

Regarding Cameo's claim that the district court erred in awarding her two overnights for every two weeks of parenting time, as we discussed earlier in this opinion, both Timothy and Cameo agreed that they could not work together to equally share parenting time. Further, Treton's education in Syracuse must be taken into account when determining a workable parenting plan. We find that the district court did not abuse its discretion in its awarding Cameo parenting time every other weekend and 15 days of "vacation" time.

### VI. CONCLUSION

In sum, based upon our de novo review of the record, we find that the district court did not abuse its discretion regarding the acknowledgement of paternity, the award of legal and physical custody, and the provision awarding her parenting time. Thus, the order of the district court is affirmed in its entirety.

AFFIRMED.