IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

CONROY V. FRANK

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

WILLIAM M. CONROY, APPELLANT,

V.

SARAH L. FRANK, APPELLEE.

Filed April 7, 2026.    No. A-25-250.

Appeal from the District Court for Douglas County: J RUSSELL DERR, Judge. Affirmed as modified.

James R. Place, of Place Law Office, for appellant.

No appearance for appellee.

RIEDMANN, Chief Judge, and PIRTLE and FREEMAN, Judges.

FREEMAN, Judge.

## I. INTRODUCTION

William M. Conroy appeals from an order of the district court for Douglas County awarding Sarah L. Frank primary legal and physical custody of their minor child. Conroy contends that the district court abused its discretion in awarding Frank sole custody, ordering Conroy to pay child support and retroactive child support, and permitting Frank to request additional breathalyzer testing during his parenting time. For the reasons set forth below, we affirm as modified.

## II. BACKGROUND

### 1. PROCEDURAL BACKGROUND

Conroy and Frank are the biological parents of Sorchal, born in June 2012. The parties met in 2011 and were romantically involved, but never married and separated in 2014. In 2016, Conroy filed for an initial child custody determination and to establish child support. Frank failed to

- 1 -

appear, and Conroy was awarded joint legal custody and primary physical custody of Sorchal, subject to Frank's parenting time. Frank was ordered to pay child support.

In September 2017, Frank moved to modify custody, parenting time, and child support, alleging a material change in circumstances, including Conroy's emergency protective custody following a suicide attempt while caring for Sorchal. The district court granted Frank ex parte emergency custody.

In February 2018, the district court considered Frank's modification complaint. By that time, the parties had negotiated a modified parenting plan establishing a two-week parenting rotation that required Conroy to provide monthly confirmation of treatment compliance from his mental health provider for as long as treatment was recommended. The parties stipulated that neither would pay child support. The court approved the plan and awarded the parties joint legal and physical custody.

In April 2019, Conroy moved to modify the custody agreement, alleging material changes in circumstances, including his continued sobriety, weekly counseling, and allegations that Frank emotionally neglected Sorchal, engaged in parental alienation, and had changes in her employment and marital status. Conroy sought child support from Frank. The district court found a material change in circumstances, but limited the modification to parenting time, ordering a 50/50 weekly rotation beginning each Sunday with one week on and one week off. The court ordered that neither party shall pay the other child support.

2. Events Giving Rise to Trial

On May 20, 2021, Frank filed an ex parte motion for sole custody of Sorchal and a second motion to modify custody, parenting time, and child support after Conroy was stopped and charged with a second offense of operating while under the influence (OWI) and child endangerment. Law enforcement reports indicated that on May 12, Conroy drove over curbs and weaved in between lanes while Sorchal was in the vehicle. Upon being stopped, he smelled strongly of alcohol and was unable to comprehend communications with law enforcement. Conroy's breath alcohol concentration was 0.187 percent. Conroy served 2 days in jail, was placed on probation for 1 year, and was subsequently placed on the child abuse registry.

Frank's affidavit in support of her ex parte motion also detailed Conroy's prior DUI in 2013, failed drug tests at work, previous suicide attempts, frequent intoxication, and past incidents of being found drunk while caring for Sorchal. Frank provided that Conroy had been found drunk and passed out on the side of the road in 2014 before he was admitted to a rehabilitative center and that Conroy had communicated to her that he could not be present with Sorchal without unwanted thoughts of suicide. The district court granted the ex parte motion, awarding Frank temporary legal and physical custody and limiting Conroy to 2 hours of weekly supervised parenting time.

In March 2022, the district court appointed a guardian ad litem (GAL) for Sorchal. In June, the parties entered a stipulated temporary order permitting Conroy unsupervised parenting time. The order stipulated:

> [Conroy] must purchase a breathalyzer . . . before June 1, 2022, and before parenting time can commence. [Conroy] shall be responsible for the cost of this device and the monthly fees. [Frank] shall have access to this account to receive direct notifications to verify dates and times of [Conroy's] tests and testing results. . . . [Conroy] shall provide transportation

to and from all visits and must blow into a breathalyzer device at 20 minutes prior to pick-up and prior to drop-off.

## 3. TRIAL

A trial on Frank's 2021 modification complaint was held in May 2024. Conroy appeared with counsel, and Frank was self-represented. Prior to trial, Conroy's counsel, Frank, and the GAL resolved several issues, relying on the GAL's amended report, which was received into evidence, and the June 2022 stipulated order. In the report, the GAL recommended the following:

The continued use of a breathalyzer for a period of 12 months at [Conroy's] expense, [Conroy] should continue to use the same within a 20 minute window prior to transporting [Sorchal] to and from his visits. He should be ordered to use it consecutively for a period of 12 months. If during this 12-month period, there is a missed test or positive test, the clock shall start over. At the end of a successful 12 months without any missed tests or positive tests, he shall discontinue use of the same.

Further, [Frank] shall be allowed to ask [Conroy] to submit to a test during his parenting time if she has reasonable suspicion of alcohol use. The test must be submitted within 30 minutes of this request.

If there is a failed or missed test, [Conroy] shall forfeit his parenting time for the remainder of that specific parenting period, which shall and can include the weekend or holiday.

Conroy agreed on the record to continue breathalyzer testing through the end of the year, subject to limitations preventing harassment by Frank through unreasonable testing requests. Conroy additionally agreed to submit to another test within 30 minutes after the first test if there is any reasonable suspicion that he is using alcohol. Frank further specified that testing should only be completed utilizing the "iBac" breathalyzer. Custody and child support remained unresolved, and the district court commenced proceedings to address these remaining issues.

### (a) Sorchal's Stability and Care

Evidence regarding Sorchal's care following the June 2022 order showed that Frank exercised sole custody for approximately three years. Frank and her husband, Justin Valentine, testified that Sorchal thrived during this period, participating in sports, no longer experiencing bed wetting, and maintaining consistent academic performance. Valentine provided financial, educational, and emotional support, including tutoring, transportation, and household expenses. Conroy did not provide child support to Frank during the 3-year period that she exercised sole custody.

Regarding Conroy's supervised parenting time following his 2021 arrest, Frank and Valentine testified that Conroy seemed lethargic, absent, and was frequently on his phone. Frank maintained that Conroy's recent failure to abide by the 2022 order led her to withhold parenting time from Conroy, despite Sorchal's anticipation to see him.

In contrast, Conroy and his wife, Sarah Conroy, testified regarding Sorchal's care in Conroy's household. They stated that Sorchal had her own bedroom during visits and enjoyed

spending time with her younger sibling. Sarah Conroy testified that she and Sorchal shared a close relationship and regularly played games, participated in sports, and created art together. She described the relationship between Conroy and Sorchal as healthy and loving.

Testimony from Conroy's mother-in-law and brother-in-law corroborated this, noting no alcohol use by Conroy since January 1, 2022.

### (b) GAL Recommendation for Sole Custody

The GAL testified regarding her investigation, observations, and custody recommendation. The GAL met with Conroy once by Zoom in the spring of 2022 and once at his home in the summer of 2022, where she observed Sorchal. During the home visit, Sorchal reported enjoying overnight visits with Conroy and expressed a desire to spend more time with him and her stepmother.

The GAL also met with Frank in April 2022, who described ongoing coparenting difficulties stemming from Conroy's drinking, mental health, and prior suicidal ideation. Frank also claimed that the parties failed to agree on parenting time dates, resulting in a 1-month period during which Conroy did not attend visits with Sorchal.

Despite these concerns, the GAL found that Sorchal maintained a natural and appropriate bond with both parents, stating that "[s]he does not go without love and affection. She is a very well-adapted child in both environments. She has sufficient space, food, activities, and she is a happy and healthy child." However, the GAL also documented multiple failures by Conroy to submit to the required breathalyzer tests. Specifically, she noted missed tests on July 11, 18, and August 15, 2022, and on January 6 and May 26, 2023. She also documented one failed test on September 15, 2023.

The GAL testified that Conroy offered little explanation for the missed breathalyzer tests. She stated that Frank was the one who supplied compliance information, including screenshots reflecting missing or failed results sent from iBac or communications between Frank and Conroy discussing missed tests. The GAL acknowledged that she herself did not receive breathalyzer results directly from iBac.

In addition, the GAL observed that Conroy demonstrated a limited willingness to compromise and often communicated in an inappropriate or untimely manner. Based on her observations during a Zoom meeting, a home visit, a 1-hour settlement conference, and review of the parties' extensive communications, the GAL recommended that sole legal and physical custody remain with Frank.

### (c) Breathalyzer Compliance Issues

The parties also presented testimony regarding Conroy's alleged noncompliance with the court-ordered breathalyzer testing. Frank testified that Conroy repeatedly missed scheduled tests and failed to follow up, despite the iBac system providing a 15-minute automatic retest mechanism to prevent false positives. Frank explained that when a test was missed, she contacted Conroy and requested an immediate retest. Frank stated that she waited 15 minutes before determining that parenting time would not occur.

Frank acknowledged that technical difficulties occasionally arose with iBac but testified that Conroy's iBac case manager advised that the breathalyzer was functioning properly and that missed tests resulted from nonpayment. Conroy disputed this explanation and testified that his

payment card was cancelled due to fraud, and iBac failed to retain updated billing information after he received a replacement card.

Communications between iBac and Conroy, submitted by Frank, showed that iBac required Conroy to authorize the system to save his payment information through the web portal, though the communications did not clearly establish whether Conroy completed the authorization. iBac further communicated multiple unpaid invoices and failed payment attempts to Conroy, which ultimately resulted in a temporary suspension of Conroy's account.

The parties next addressed missed tests occurring in mid-2022. Conroy testified that he missed the July 11, 2022, test because iBac failed to properly schedule his testing. He denied missing tests on July 18 and August 15, 2022. He also asserted that a reported missing test on August 17, 2023, fell on a Thursday, a day he was not required to take a test.

Conroy further testified regarding a January 6, 2023, test, asserting that he took the test but that iBac failed to transmit the result to Frank. He also explained that the May 26, 2023, missed test resulted from an early school release, which required him to arrange pick up for Sorchal because Frank and her husband could not be reached. Conroy testified he could not take the test before the scheduled time, but Sorchal required immediate pickup. The GAL nonetheless treated this incident as a missed test under the order. Conroy maintained that he completed the May 26, 2023, test, while Frank disputed that assertion.

Conroy also disputed missing a test in August 2023. Conroy testified that he missed the August 27, 2023, test because Sorchal was attending a day camp and not in his immediate care. Frank testified that she expected testing to occur regardless, because Conroy's parenting time immediately followed the camp. Frank conceded that she had previously allowed substitute testing methods to avoid disrupting Sorchal's schedule but stated that she preferred the exclusive use of the iBac because it required facial recognition and automatically transmitted results, thereby reducing direct communication between the parties.

Conroy testified that he continued to experience issues with iBac, including irregular testing times despite repeated calls and emails requesting scheduling corrections. In its communication with Conroy, iBac stated that the system failed to save changes and indicated that it would resolve the issue.

The parties presented extensive evidence concerning the September 15, 2023, failed test. The GAL testified that Conroy attributed the positive test result to consuming a Red Bull energy drink immediately before testing. She stated that she did not know whether this could affect the result and was unable to obtain records directly from iBac despite issuing a subpoena. Conroy testified that he obtained a substitute breath test at Walmart to demonstrate his sobriety. Sarah Conroy was present for the test and testified that the test registered a zero. Conroy and Sarah Conroy recorded the test, but did not send the recording to Frank. Frank would not accept results from a different device following this failure.

Brandon Miller, Conroy's former employer, testified that Conroy worked three weddings for him on September 15, 2023, parking cars, setting up chairs for different ceremonies, and preparing for the ceremonies. Miller confirmed that he knew Conroy had a prior OWI and was subject to interlock requirements, yet he allowed Conroy to park vehicles at the venue and did not observe Conroy to be under the influence of alcohol at any point during the day.

Finally, the parties addressed a reported failed test on November 20, 2023. Conroy could not explain the positive result. Frank acknowledged that she required Conroy to participate in additional testing following the failed test, including twice on Friday, Saturday, and Sunday, despite the court order being only for Friday and Sunday. iBac reported this test as a failure in its full history report supplied to the district court.

## (d) Employment and Financial Circumstances

The district court also evaluated the parties' employment and financial circumstances to determine child support. At the time of trial, Conroy was unemployed and a stay-at-home dad to his 1-year-old child with his wife, Sarah Conroy. Conroy was actively pursuing a position with the fire department and reported having no current income.

Frank was a self-employed tarot card reader and volunteered with the East African Development Association of Nebraska. She stated that her monthly income ranged from $5 to $600 a month. Frank acknowledged she could work full time but claimed she had to quit her full-time jobs to obtain ex parte emergency custody on two occasions.

Based on this testimony, the court stated it would impute minimum wage income to both parties. Frank asserted that Conroy previously earned between $15 and $16 per hour. However, the court found that both parties could work but chose not to and therefore confirmed imputing minimum wage.

## (e) Exhibits Offered at Trial

At trial, Frank offered documentary evidence to support her motion and to corroborate the testimony presented during the trial. She introduced exhibits, including Sorchal's report cards (showing consistent proficient performance) and the sentencing order arising from Conroy's convictions for child endangerment and OWI.

Frank also introduced a child abuse and family assessment and the corresponding notice of child abuse, which identified Conroy as responsible for child abuse following the 2021 OWI. In addition, she submitted Conroy's Boys Town case summary and progress reports, which detailed his treatment history, including reports related to his 2016 suicide ideation and the events surrounding the 2021 OWI. In those reports, Conroy reported that he did not attempt suicide in front of Sorchal and stated that he consumed excessive alcohol and verbalized suicidal thoughts to a friend. The records also showed that Conroy attended therapy with his long-term therapist and a therapist at Heartland Family Services.

Frank also introduced records of the parties' communications through the AppClose application, which the witnesses referenced during testimony. Those communications included messages in which Conroy stated he was unable to log in to iBac on July 21, 2023, and addressed the failed test on September 15, 2023. Frank also submitted a written summary offered to support her testimony regarding parenting time compliance and testing. That exhibit identified twelve dates on which Conroy voluntarily did not exercise parenting time, four dates on which Frank offered additional parenting time that Conroy declined, three missed breathalyzer tests, and one failed test.

## 4. DISTRICT COURT ORDER

On June 20, 2024, the district court issued its order. The court found that it was in Sorchal's best interests for Frank to have sole physical and legal custody. The court ordered a parenting time schedule under which Conroy had Sorchal one overnight per week and alternating weekends.

The district court also ordered that

[Conroy] continue to use a breathalyzer for a period of 12 months at [Conroy's] expense. [Conroy] shall use the breathalyzer within a 20 minute window prior to transporting Sorchal to and from his visits. If, during the 12 month period there is a missed test or positive test, the 12 month period shall begin anew. At the end of a successful 12 month period without any missed or positive tests, [Conroy] may discontinue the use of the breathalyzer. Further, [Frank] may request [Conroy] to submit to a breathalyzer test during his parenting time if she has a reasonable belief [Conroy] is using alcohol and such test must be taken within 30 minutes of the request.

In calculating child support, the district court accepted Frank's child support calculation as offered in an exhibit and attached the calculation to its order. Although the court had stated its intention to impute minimum wage to both parties, the worksheet utilized a gross monthly income of $2,400 for Conroy and $600 for Frank. As a result, the court ordered Conroy to pay $383 per month in child support beginning June 1, 2024. The court ordered that the child support be retroactive to July 1, 2021.

## 5. POST TRIAL

In June 2024, Frank sought a nunc pro tunc order to correct and clarify parenting time. Around the same time, Conroy moved for a new trial, alleging irregularities in the May 2024 proceedings that denied him a fair trial, insufficient evidentiary support for the district court's order, and errors of law. In September, Frank filed a nearly identical motion for clarification with minor additions. She also filed an order to show cause, supported by an affidavit asserting that Conroy should be held in contempt for failing to pay child support and comply with the parenting time order.

In September 2024, the district court heard Frank's motion to clarify and confirmed that Conroy's parenting time consisted of alternating weekends, from Friday after school through Monday. In November, the court overruled Conroy's motion for a new trial, concluding that any challenge to the prior ruling should be raised in an appeal. Conroy filed a notice of appeal later that month.

On February 10, 2025, this court dismissed the appeal for lack of jurisdiction, holding that "no final order exists because there was a motion to alter or amend." Following dismissal, the court scheduled a status hearing on Frank's pending contempt motion filed in November 2024. At the status hearing, Frank withdrew her motion for clarification. The court also extended the deadline for Conroy's retroactive child support payment to April 1, 2025, and set a further status hearing for that same date.

Conroy timely appeals to this court. Frank did not file a brief in response.

### III. ASSIGNMENTS OF ERROR

Conroy assigns, restated, that the district court abused its discretion by (1) awarding Frank sole legal and physical custody of Sorchal, (2) calculating and awarding child support and retroactive payments to Frank, and (3) granting Frank authority to request additional breathalyzer testing of Conroy.

### IV. STANDARD OF REVIEW

Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion. *Jones v. Colgrove*, 319 Neb. 461, 24 N.W.3d 1 (2025).

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Conley v. Conley*, 33 Neb. App. 98, 11 N.W.3d 671 (2024).

### V. ANALYSIS

#### 1. CUSTODY

Conroy asserts that the district court abused its discretion by awarding sole legal and physical custody of Sorchal to Frank. Conroy claims the court did not sufficiently analyze each best interest factor and overlooked testimony indicating that Sorchal has a healthy relationship with both parents, that Sorchal expressed a desire to spend more time with Conroy, and that Conroy provides a safe and stable environment. Conroy further argues that the court overlooked his efforts to maintain sobriety and comply with court ordered requirements. He maintains that any missed breathalyzer tests were due to technical errors and scheduling conflicts, and that the single failed test resulted from a Red Bull energy drink.

The legal principles governing modification of child custody are well settled. Ordinarily, custody and parenting time of a minor child will not be modified unless there has been a material change in circumstances showing that the best interests of the child require modification. *Lindblad v. Lindblad*, 309 Neb. 776, 962 N.W.2d 545 (2021). It is the burden of the party seeking modification to show a material change in circumstances. See *Sulzle v. Sulzle*, 318 Neb. 194, 14 N.W.3d 532 (2024).

 A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Id*. Modifying a custody or parenting time order requires two steps of proof. See *Lindblad v. Lindblad, supra*. First, the party seeking modification must show by a preponderance of the evidence a material change in circumstances that has occurred after the entry of the previous custody order and that affects the best interests of the child. See *id*. Second, the party seeking modification must prove that changing the child's custody or parenting time is in the child's best interests. See *id*. In determining whether the custody of a minor child should be changed, the evidence of the custodial parent's behavior during the year or so before the hearing on the motion to modify is of more significance than the behavior prior to that time. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

### (a) Material Change in Circumstances

The district court did not expressly find a material change in circumstances and instead grounded its order in the best interests of the child analysis; however, this lack of an explicit finding is not dispositive. The Nebraska Supreme Court has recognized that even when a finding is not expressly made by a trial court, an appellate court, in its de novo review, may make such a finding if the evidence supports it. See *Janda v. Janda*, 32 Neb. App. 953, 9 N.W.3d 212 (2024). In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. *Weaver v. Weaver*, 308 Neb. 373, 954 N.W.2d 619 (2021). When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*. Upon our de novo review of the record, we conclude that a material change in circumstances occurred.

In May 2021, Frank filed a complaint to modify custody and the parenting plan, alleging a material change in circumstances. Frank asserted that Conroy had been "arrested for a second DUI and charged with child endangerment as [Sorchal] was in the car while he was driving drunk." In June 2022, the parties entered into a stipulated temporary order awarding Frank temporary physical and legal custody of Sorchal while allowing Conroy unsupervised parenting time conditioned upon his use of a breathalyzer prior to exercising parenting time.

The record demonstrates that Conroy failed to comply with the terms of the stipulated order, and the district court credited Frank's version of events over Conroy's. Conroy failed two breathalyzer tests on September 15 and November 11, 2023, as confirmed by iBac history reports, and missed multiple required breathalyzer tests. Although Conroy offered explanations for the missed tests, including Sorchal's camp and school early outs, the fact remains that compliance with the breathalyzer requirement was mandatory under the June 2022 stipulated order. Given Conroy's history of alcohol abuse and child endangerment, strict adherence to the court order was essential to protect Sorchal. Therefore, we determine that a material change in circumstances occurred since the entry of the prior custody order.

### (b) Best Interests

Before a court modifies custody based upon a material change in circumstances, its paramount consideration is the best interests of the children. See *Scott v. Scott*, 319 Neb. 877, 25 N.W.3d 439 (2025). Neb. Rev. Stat. § 43-2923 (6) (Cum. Supp. 2024) provides that in determining custody and parenting arrangements, the court shall consider the best interests of the minor child, including (1) the relationship of the child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. Other relevant considerations that may also be considered include the stability of the child's existing routine, minimization of contact and conflict between the parents, and the general nature and health of the child. See *Jaeger v. Jaeger*, 307 Neb. 910, 951 N.W.2d 367 (2020).

In our de novo review, we find that the district court did not abuse its discretion in concluding that it was in Sorchal's best interests for Frank to retain sole physical and legal custody.

Conroy argues that the district court failed to conduct a detailed analysis of each statutory factor. However, this court has previously held that the district court is not necessarily obligated to provide a detailed analysis in a modification of custody case. See *Janda v. Janda*, 32 Neb. App. 953, 9 N.W.3d 212 (2024). Nonetheless, it is the best practice for a district court to provide some detailed analysis in determining what is in the best interests of the children. See *id*.

With respect to the first factor, the evidence establishes that prior to the modification hearing, Sorchal maintained a loving and meaningful relationship with both parents. The GAL observed that Sorchal bonded with both Frank and Conroy and did not lack love or affection in either household. This factor does not weigh against either party.

Turning to the second factor, Sorchal was 11 years old at the time of trial. There was no evidence that Sorchal expressed a desire for a change in custody. The GAL's report stated that Sorchal enjoyed overnights with Conroy and wished to spend more time with Conroy and her stepmother. However, this statement does not constitute a reasoned preference for a custody change. Nebraska law requires that a child's wishes be based on sound reasoning and considered in context. See § 43-2923(6). Here, Sorchal did not express dissatisfaction with Frank's care or a desire to leave her primary home. This factor is therefore neutral.

The third factor weighs strongly in Frank's favor. The evidence supports the conclusion that Sorchal's general health, welfare, and social development have improved while in Frank's sole care. Frank testified that Sorchal no longer experiences bed wetting, maintains consistent academic performance, and participates in sports. Sorchal receives tutoring support as needed and presents as a happy and healthy child.

As to the fourth factor, there was no credible evidence presented that either Frank or Conroy has inflicted any abuse upon a member in their respective households. Standing alone, this factor does not weigh in favor of either party.

The fifth factor, however, weighs decisively in Frank's favor. Conroy was convicted of second offense OWI with Sorchal in the vehicle and was subsequently placed on the child abuse registry. In response, the district court entered a stipulated temporary order, requiring alcohol monitoring through a breathalyzer prior to parenting time. In the year preceding trial, Conroy repeatedly failed to comply with that order, including both missing and failing tests.

Additionally, Sorchal has resided predominantly with Frank for approximately 3 years, where she has maintained a stable life. Considering all statutory factors and relevant circumstances, we find no error in the district court's decision to order that sole physical and legal custody remain with Frank. While Sorchal maintains a loving relationship with Conroy, that relationship can continue through structured parenting time with the appropriate safeguards. Accordingly, the district court did not abuse its discretion.

### 2. CHILD SUPPORT

Conroy argues that the district court abused its discretion in calculating and awarding child support, including retroactive payments, because the calculation was unsupported by evidence or testimony presented at trial.

## (a) Child Support Calculation

Conroy first argues that the district court disregarded its stated intent to impute minimum wage to both parties and instead adopted Frank's proposed calculation, which overstated Conroy's income and understated Frank's. Conroy further asserts that the court erred by calculating support using a "single" filing status rather than "married filing jointly." Brief for appellant at 23.

In general, child support payments should be set according to the Nebraska Child Support Guidelines. See Neb. Ct. R. § 4-203 (rev. 2025). The main principle behind the Guidelines is to recognize the equal duty of both parents to contribute to the support of their children in proportion to their respective net incomes. See Neb Ct. R. § 4-201 (rev. 2025). Earning capacity may be considered in lieu of a parent's actual, present income. See Neb. Ct. R. § 4-204(e) (rev. 2025). Earning capacity is not limited to wage-earning capacity, but includes moneys available from all sources. *Id*. When imputing income to a parent, the court shall take into consideration the specific circumstances of the parents, to the extent known. *Id*. Use of earning capacity to calculate child support is useful "when it appears that the parent is capable of earning more income than is presently being earned." *Freeman v. Groskopf*, 286 Neb. 713, 720, 838 N.W.2d 300 (2013) (quoting *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d at 175 (1999)).

Here, the district court expressly stated on the record that it would impute minimum wage to both parties, reasoning that each could work full-time but chose not to do so. It is apparent from the record that the court order disregarded that intention. Instead of imputing minimum wage to both parties, the court adopted Frank's worksheet, which effectively increased Conroy's imputed income to $2,400, while simultaneously decreasing Frank's imputed income to $600 per month. This is directly contrary to the court's own finding. At the time of trial, Nebraska's minimum wage was $12 per hour. See Neb. Rev. Stat. § 48-1203 (Cum. Supp. 2024). Imputing full-time minimum wage employment to both Conroy and Frank yields a gross earned taxable income of $2,080 per month. Therefore, the child support calculation must be modified to reflect $2,080 per month for both Conroy and Frank, consistent with the court's stated intention.

Conroy also argues that the district court erred by relying on a calculation that used an incorrect filing status. Based on our de novo review of the record, we agree. See *Jones v. Colgrove*, 319 Neb. 461, 24 N.W.3d 1 (2025) (modification of child support orders are reviewed de novo on record for abuse of discretion).

Conroy and his wife testified multiple times regarding their marital status, and Frank was both present during this testimony and aware of their marriage. Frank offered no evidence to dispute Conroy's married status. Conroy claimed that had the correct filing status been used, his child support obligation would have been $359; however, he did not provide a child support calculation in support of this amount. Based on the record, we find that the district court's use of a "single" filing status was contrary to the evidence presented at trial and constituted an abuse of discretion.

Based on these errors, we have completed our own sole custody child support calculation worksheet consistent with our findings. There is no error assigned pertaining to health insurance, and we maintain the amount presented in the child support calculation provided by Frank. See Neb. Ct. R. § 4-215 (rev. 2025) (parent requesting adjustment for health insurance premiums must

submit proof of cost for health insurance coverage of child(ren)). Our worksheet is attached to this opinion as Appendix A.

Based on our de novo calculation, Conroy's monthly child support obligation should be $359 for Sorchal. This adjusts the division of expenses, assigning 50.29 percent to Frank and 49.71 percent to Conroy.

### (b) Retroactive Child Support

Conroy next argues that the district court failed to consider his financial inability to pay any retroactive support. We find no abuse of discretion.

The retroactive child support order related back to the district court's June 7, 2021, order awarding Frank temporary legal and physical custody of Sorchal. The district court expressly found that Conroy could earn an income equivalent to full-time employment at minimum wage. Conroy's lack of current employment did not negate that earning capacity or relieve him of his support obligation. Accordingly, the district court did not abuse its discretion in ordering retroactive child support.

The district court ordered Conroy to pay support of $383 per month beginning June 1, 2024, and further ordered that the child support "shall be retroactive to the date of July 1, 2021." Such order would produce retroactive support totaling $13,405 calculated from July 1, 2021, to June 1, 2024. We modify the retroactive support order consistent with our modification of Conroy's ongoing child support obligation. Applying the modified support amount of $359 per month from July 1, 2021, to June 1, 2024, results in total retroactive support of $12,565. This modification reduces Conroy's arrearages by $840.

As modified, the retroactive support award is affirmed.

### 3. BREATHALYZER PROVISION

Conroy assigns that the district court abused its discretion by granting Frank unilateral authority to request additional breathalyzer testing during Conroy's parenting time. Conroy challenges the provision allowing Frank to request testing based on a "reasonable belief" that Conroy is using alcohol. Brief for appellant at 28. Conroy argues that it improperly vests judicial authority in Frank by allowing her to restrict Conroy's parenting time. We disagree.

Nebraska law requires that determinations of parenting time and visitation be made in accordance with the child's best interest. See Neb. Rev. Stat. § 43-2921 (Cum. Supp. 2025). The Supreme Court has previously upheld a provision in a parenting plan that restricted a parent's ability to consume alcohol during parenting time. See *Scott v. Scott*, 319 Neb. 877, 25 N.W.3d 439 (2025). A similar provision appears in the district court's order, and Conroy does not argue error with its inclusion. Rather, it is the "reasonable suspicion" requirement that Conroy contests because of the authority it grants Frank.

A claim similar to Conroy's was raised in *Schmeidler v. Schmeidler*, 25 Neb. App. 802, 912 N.W.2d 278 (2018), *disapproved on other grounds, State on behalf of Kaaden S. v. Jeffery T.*, 302 Neb 933, 932 N.W.3d 692 (2019). In *Schmeidler*, the appellant argued on direct appeal that the district court impermissibly delegated its authority by approving a parenting plan that allowed the appellee to suspend the appellant's parenting time based solely on her belief that the appellant had been drinking alcohol. See *id*. This court agreed and held that the safety plan constituted an

- 12 -

unlawful delegation of the trial court's independent duty to determine visitation according to the child's best interests. See *id*.

The court found the safety plan problematic because it allowed the appellee to retrieve the child if she "'learn[ed] that [the appellant] has been drinking alcoholic beverages,'" without any requirement that the information be confirmed. *Schmeidler v. Schmeidler*, 25 Neb. App. at 813, 912 N.W.2d at 288. This court concluded that this provision effectively permitted the appellee to unilaterally terminate parenting time based on an unconfirmed belief, creating the potential to deny the noncustodial parent proper visitation rights. See *id*.

Here, the order requires only that Conroy submit to an additional alcohol test during his parenting time upon Frank's "reasonable suspicion" that he has been drinking. It is noteworthy that while the GAL recommended in her report that Conroy shall forfeit parenting time for the remainder of the specific period if he tests positive, the district court declined to include that provision in its order. Further, the ordered provision does not vest Frank with the unilateral discretion to determine visitation. Instead, the court retains full decision-making authority over parenting time, based on an independent inquiry of Sorchal's best interest. See *Schmeidler v. Schmeidler, supra.* Accordingly, the provision does not permit unilateral action by Frank and does not constitute an unlawful delegation of the district court's authority.

## VI. CONCLUSION

For the foregoing reasons, we modify the district court's order only as it pertains to the calculation of child support and retroactive child support. We affirm the order in all other respects.

AFFIRMED AS MODIFIED.

- 13 -

Case Name: Conroy v. Frank
Worksheet 1 - Basic Income and Support Calculation

Frank: Married Filing Jointly / 2 Exemptions / Self Employed
Conroy: Married Filing Jointly / 0 Exemptions / Regular Employment

| Line | Description | Frank | Conroy |
|------|-------------|-------|--------|
| 1 | Gross Earned Taxable Income | $2,080.00 | $2,080.00 |
| 1 | Gross Unearned Taxable Income | $0.00 | $0.00 |
| 1 | Tax-Exempt Income | $0.00 | $0.00 |
| 2.a | Taxes - Federal | $0.00 | $0.00 |
| 2.a | Taxes - Nebraska | $0.00 | $14.99 |
| 2.b | FICA - Social Security / Railroad Retirement* | $238.19 | $128.96 |
| 2.b | FICA - Medicare | $55.71 | $30.16 |
| 2.c | Retirement | $0.00 | $0.00 |
| 2.d | Previously Ordered Support | $0.00 | $0.00 |
| 2.e | Regular Support for Other Children | $0.00 | $0.00 |
| 2.f | Health Insurance Premium for Parent | $0.00 | $0.00 |
| | Other Deductions | $0.00 | $0.00 |
| | Child Tax Credit | ($141.67) | ($0.00) |
| 2.g | Total Deductions | $152.23 | $174.11 |
| 3 | Net Monthly Income | $1,927.77 | $1,905.89 |
| 4 | Combined Net Monthly Income | $3,833.66 | |
| 5 | Combined Net Annual Income | $46,003.92 | |
| 6 | Each Parent's Percent | 50.29% | 49.71% |
| 7 | Monthly Support from Table (1 Child) | $723.00 | |
| 8 | Health Insurance Premium for Children | $0.00 | $0.00 |
| 9 | Total Obligation | $723.00 | |
| 10 | Each Parent's Monthly Share | $363.60 | $359.40 |
| 11 | Credit For Health Insurance Premium Paid | ($0.00) | ($0.00) |
| 12 | Each Parents' Final Share (1 Child, rounded) | $364.00 | $359.00 |

Worksheet 4 - Number of Children Calculation (final shares are rounded to the nearest whole dollar)

| No. Children | Table Amt. | Table + Health Ins. | Frank's Share of Total | Conroy's Share of Total | Frank's Final Share | Conroy's Final Share |
|---|---|---|---|---|---|---|
| 1 | $723.00 | $723.00 | $363.60 | $359.40 | $364.00 | $359.00 |